## In re GRAND JURY SUBPOENA DATED DECEMBER 19, 1978 ISSUED TO GENERAL COUNSEL, JOHN DOE, INC.

### No. M 11–188.

United States District Court,
S. D. New York.

Feb. 21, 1979.

Jules Ritholz, Lawrence S. Feld, James J. Mahon, Kostelanetz & Ritholz, New York City, for petitioner.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., by Gregory L. Diskant, Asst. U. S. Atty., New York City, for respondent.

PIERCE, District Judge.

## OPINION AND ORDER

Petitioner brings this motion pursuant to Rule 17 of the Federal Rules of Criminal Procedure for an order quashing a Grand Jury subpoena issued to its general counsel. For the reasons that follow, the motion is denied.

## Facts

For the purposes of this motion, the following allegations of the petitioner are taken as true. John Doe, Inc. ("John Doe") is a publicly owned corporation engaged in the manufacture and sale of various pharmaceuticals, household products, cosmetics, toiletries, chemicals and environmental control systems. Besides its numerous domestic divisions and subsidiaries, petitioner has one hundred seventeen foreign subsidiaries in one hundred twenty-five countries.

In November, 1975, it was notified by its independent auditors, Price Waterhouse & Co., of possible illegal payments to foreign officials by employees of John Doe's foreign subsidiaries during the period 1970 through 1974. A preliminary investigation was conducted by John Doe's management, the results of which induced its board of directors to authorize a broader investigation by its Audit Committee. The firm of Covington & Burling was retained as legal counsel to assist petitioner's vice-president and general counsel in this second investigation in January, 1976. Price Waterhouse & Co. was also retained as outside accountants to aid in the investigation. As part of this investigation, numerous employees of John Doe were required to complete a questionnaire which had been drafted by Covington & Burling and to submit to interviews conducted by members of that firm.

The objective of this investigation was not merely to ascertain the amount, if any, of illicit foreign payments made during this period, but also for the purpose of preparing an 8–K report which was to be submitted to the Securities and Exchange Commission. By submitting such a report, John Doe hoped to participate in the SEC's Voluntary Disclosure Program and thereby avoid federal securities litigation. A third purpose of the investigation was to prepare for possible government criminal and tax actions as well as shareholder derivative suits. Covington & Burling provided legal advice concerning what should be included in the report and also advice concerning other possible future litigation.

The results of this investigation were generally disclosed in an 8–K report filed with the SEC in February, 1976. The SEC subsequently met with John Doe's representatives who revealed some of the detailed results of the investigation. Petitioner contends that its representatives had expressly refused to reveal those details of the investigation which it now claims to be protected by the attorney-client privilege. However, an SEC representative who was present at that meeting contends that John Doe had agreed to make all of the underlying documentation of the investigations available for the SEC's inspection, but hesitated to permit photocopying of the documents.

The Grand Jury has undertaken an investigation of possible violations of federal law arising out of foreign payments. It has subpoenaed various documents from petitioner, some of which have been provided. The items subpoenaed are documents relating to both of petitioner's investigations including: (1) questionnaires completed by petitioner's employees and others; (2) notes taken at all interviews; (3) memoranda relating to all interviews; (4) all summaries and reports; and (5) all accountant's workpapers. John Doe has moved to quash the Grand Jury subpoena of these items on the grounds that the attorney-client and work-product[1] privileges protect these items.

*Attorney-Client Privilege*

The initial issue raised by petitioner's claim of the attorney-client privilege is whether the privilege, as applied to corporations, is sufficiently broad to include communication between petitioner's attorneys and the employees who were interviewed or who responded to the questionnaire. If the scope of the privilege is determined to be sufficiently broad so as to protect all of these communications, then the circumstances surrounding these communications must be reviewed to determine whether the prerequisites for attachment of the privilege were present.

A review of the authorities discussing the attorney-client privilege indicates that its purpose is to encourage clients to make full disclosure to their attorneys so as to enable those attorneys to give informed legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). This privilege is an exception to the general principle that every man's evidence should be available. *In re Horowitz*, 482 F.2d 72 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973); 8 *Wigmore's Evidence* § 2291 at 554, (McNaughton rev. ed. 1961). Furthermore, public policy favors mutual knowledge of all the relevant facts. *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). Consequently, this privilege must be "strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 *Wigmore's Evidence* § 2291 at 554 (McNaughton rev. ed. 1961).

The petitioner urges the Court to adopt a board interpretation of this privilege as applied to corporations such that communications between a corporation's attorney and any of its employees are protected from discovery so long as the subject matter of the communication is related to the scope of the employee's duties. This viewpoint is shared by a minority of courts. 2 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 503(b)[04] at 503–04 (1978); Comment, *The Application in the Federal Courts of the Attorney-Client Privilege to the Corporation*, 39 Fordham L.Rev. 281 (1970). The principal courts adhering to this rule are those in the Seventh and Eighth circuits. *Harper & Row Publishers, Inc. v. Decker*, 423 F.2d 487 (7th Cir. 1970), *aff'd without opinion by an equally divided court*, 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 433 (1971); *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596 (8th Cir. 1978) (en banc).

1. The government states that it only seeks to learn the "facts" surrounding the foreign payments in issue and is not interested in the mental impressions of John Doe's attorneys. To the extent that the subpoenaed documents contain non-factual material, the government proposes that petitioner be permitted to redact such information subject to the supervision and approval of the Court.

The majority of courts have adopted a more restricted standard referred to as the "control group test." Under this rule, the only protected communications are those between a corporation's attorney and employees who are in a position of control of or who may substantially participate in any decision the corporation may take upon the legal advice of counsel. *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F.Supp. 483 (E.D.Pa.), *mandamus and prohibition denied sub nom., General Electric Co. v. Kirkpatrick*, 312 F.2d 742 (3d Cir. 1962), *cert. denied*, 372 U.S. 943, 83 S.Ct. 937, 9 L.Ed.2d 969 (1963). Although the law is this circuit is undecided, this rule has been favorably evaluated. *United States v. International Business Machines Corp.*, 66 F.R.D. 154, 178 (S.D.N.Y.1974) (Edelstein, Ch. J.). The communications in issue would not be within the scope of the attorney-client privilege under the "control-group test" whereas they may be protected under the "scope of employment" rule.

The principal argument in support of the "scope of employment" rule is that absent a broad reading of the privilege, there would not be the free flow of information contemplated by this privilege from client to attorney because of the nature of corporations. *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978) (en banc). Since a corporation can only act through its agents or employees, it can take effective advantage of the privilege only when the privilege is extended to communications from its employees, the subject matter of which is within the scope of the employee's duties.

It is also argued that this test is consistent with the holding in the seminal case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). There the Supreme Court found that communications between the employees of a partnership and the partnership's counsel were not privileged since the employees were mere witnesses. The employees had discussed with the partnership's attorney what they had observed concerning an unusual accident involving the partnership's tugboat on which they were crewmen. In balancing the purpose of this privilege with the countervailing public interests—mutual knowledge of the relevant facts and the availability of every man's evidence—the Court held that the privilege did not extend to these employees.

The advocates of the scope of employment test have reasoned that the Court in *Hickman* found the crewmen to be mere witnesses not because they were employees but because what they observed was not within the scope of their employment. Neither this reasoning nor the argument base on the nature of corporations is persuasive. The crewmen in *Hickman* observed an incident which, while it was apparently of an unusual nature, may generally be said to be within the potential scope of their work. Consequently, it does not appear that, based on the facts of *Hickman*, a broad exception to the principle set forth in that case exists when the communications in controversy concern matters within the scope of the witness' employment. Further, while some modification of the privilege may be necessary to accommodate the differences between a corporation and a partnership or an individual, the Court finds that the control-group test is both sufficient to account for these differences and consistent with the often recited directive that the scope of this privilege must be limited. *Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1974); *In re Horowitz*, 482 F.2d at 81. Accordingly, the Court finds that the communications in controversy which involve non-control group employees are not within the scope of the attorney-client privilege.

*Work-Product Privilege*

The petitioner also contends that these communications are protected by the work-product privilege. This privilege has been codified in Rule 23(b)(3) of the Federal Rules of Civil Procedure and Rule 16(b)(2) of the Federal Rules of Criminal Procedure. It generally exempts from discovery material prepared by counsel in anticipation of litigation. However, this protection is not

absolute. An adversary may discover this material where there has been waiver by the party asserting the privilege, *United States v. Nobles*, 422 U.S. 225, 239, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975), or when there is a showing of necessity, *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The government contends both that there is a sufficient necessity under the circumstances here to warrant discovery and that petitioner has waived its privilege.

The Grand Jury is presently engaged in an investigation of possible criminal violations of federal laws arising out of illegal foreign payments. As part of this investigation, the government has subpoenaed the petitioner's questionnaires which were prepared by Covington & Burling and answered by 60 of John Doe's employees at the request of John Doe. The government also seeks access to the records of interviews with 35 employees. The financial records of petitioner have apparently been reviewed but the facts relating to these payments, the government alleges, remain concealed.

All of petitioner's employees with a few exceptions are purportedly represented by its present counsel. Some of these employees are foreign nationals and are not subject to Grand Jury subpoena. Further, the government has been informed that those employees who are represented by John Doe's attorneys will not testify before the Grand Jury unless they are granted immunity. Since some of these individuals may be potential defendants in future government prosecutions and since the government apparently does not have sufficient information to selectively grant these demands, the government is in the difficult position of either having to grant immunity on an uninformed basis or proceed without access to first-hand information concerning the payments in issue. Under these circumstances, the government contends, there is sufficient showing of necessity and undue hardship in securing the equivalent information to warrant disclosure.

The Court agrees. Here, the witnesses are effectively unavailable to the government. These employees are not merely temporarily unavailable, *e. g., Watn v. Pennsylvania Railroad*, 19 F.R.D. 358 (E.D.Pa.1956), nor is this an instance in which the government can compel these employees to submit to examination through ordinary discovery procedures, *e. g., Tandy & Allen Construction Co. v. Peerless Cas. Co.*, 20 F.R.D. 223 (S.D.N.Y.1957). The witnesses whose testimony is sought may generally be described as hostile witnesses since they have refused to testify absent immunity from prosecution. In such instances, disclosure may properly be required. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2025 at 218 (1970).

Moreover, the demand for immunity is not asserted by a few of the employees involved but rather is demanded by all. It appears to the Court that the government cannot effectively circumvent the evidentiary barrier constructed by this mutual silence by means other than the granting of immunity. Consequently, petitioner's claim of work-product privilege must give way to the government's need for information. Having determined that there is a sufficient showing of necessity and undue hardship in securing substantially equivalent information, the Court will not address the issue of waiver.

*Conclusion*

The application for an order quashing the Grand Jury's subpoena is denied. The petitioner is directed to submit the information requested by the Grand Jury's subpoena.[2]

SO ORDERED.

---

2. See Footnote 1, page 693.