**CARTER–WALLACE, INC., Plaintiff,**

**v.**

**HARTZ MOUNTAIN INDUSTRIES, INC., and the Hartz Mountain Corporation, Defendants.**

**No. 81 Civ. 458 (RLC).**

United States District Court,
S.D. New York.

Sept. 22, 1982.

Breed, Abbott & Morgan, New York City, for plaintiff; Donald B. da Parma, New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for defendants; Ira S. Sacks, New York City, of counsel.

Williams & Connolly, Washington, D.C., for David Lovitz and James Proud; Gregory B. Craig, Washington, D.C., of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In the latest flurry of bitter, sometimes peevish papers that have been filed in this action, Carter-Wallace, Inc. ("C–W"), and Hartz Mountain Industries, Inc. ("Hartz"), have each brought two motions.

In its first motion, C–W asks the court, pursuant to Rules 26(b)(3) and 37, F.R. Civ.P., to order two of Hartz' top executives to respond to questions that they refused to answer at C–W's depositions or, in the alternative, to rule them ineligible to testify at trial. In addition, C–W seeks to compel testimony and the production of materials that Hartz asserts are protected under the work product doctrine.

When they were deposed by C–W, David Lovitz, President of Hartz, and James D. Proud, Senior Vice President for Sales and Marketing, invoked the fifth amendment's guarantee against self-incrimination and refused to answer most of C–W's questions.

They stated that on the advice of counsel they would not respond because of an ongoing investigation into Hartz' activities by a federal grand jury in the Eastern District of Virginia.

C–W asserts three grounds for its belief that these Hartz executives should be compelled to answer C–W's questions, notwithstanding their reliance on the fifth amendment.

First, C–W contends that the Hartz executives asserted their right against self-incrimination in such a vague and ambiguous way that they did not formally invoke it. C–W's contention has no merit. While the responses of Lovitz and Proud and the explanations of their attorneys with regard to exactly which constitutional provisions they were invoking were less than pellucid, it is nonetheless true "that a claim of the privilege [against self-incrimination] does not require any special combination of words." *Quinn v. United States,* 349 U.S. 155, 162, 75 S.Ct. 668, 673, 99 L.Ed. 964 (1955). That C–W would spend pages and pages in its papers quibbling over the fact that Lovitz and Proud invoked the fifth amendment generally rather than the self-incrimination clause specifically wastes both the court's time and the client's resources. Despite the vague way in which Lovitz and Proud claimed their fifth amendment rights, their assertion was valid because "the fact that a witness expresses his intention in vague terms is immaterial so long as the claim is sufficiently definite to apprise the [questioner] of his intention." *Id.* at 164, 75 S.Ct. at 674.

Second, C–W argues that any claim of privilege asserted by Hartz' top personnel could not be justified because, in C–W's words, there is no "real, substantial hazard[ ] of incrimination." The privilege against self-incrimination may, of . course, be relied on in connection with civil depositions, *Kastigar v. United States,* 406 U.S. 441, 444, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972), and determinations as to whether the privilege is justified are to be made by the trial court based upon the particular

circumstances of each case. *Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951); *Camelot Group, Ltd. v. W.A. Krueger Co.,* 486 F.Supp. 1221, 1225 (S.D.N.Y.1980) (Weinfeld, J.). "The protection of the privilege is confined to instances where the witness has reasonable cause ... to believe that a direct answer would support a conviction or furnish a link in the chain of evidence needed to prove a crime." *Camelot Group, Ltd. v. W.A. Krueger Co., supra* at 1225. What is more, "the right to assert one's privilege against self-incrimination does not depend upon the *likelihood,* but upon the *possibility* of prosecution." *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir.1974) (emphasis in original); *accord United States v. Miranti,* 253 F.2d 135, 139 (2d Cir.1957); *Camelot Group, Ltd. v. W.A. Krueger Co., supra* at 1229.

■ Because there appears to be a real possibility that some of Hartz' top executives will face prosecution as a result of the grand jury investigation in Virginia, their invocation of the fifth amendment here "protects against real dangers, not remote and speculative possibilities," *Zicarelli v. New Jersey Commission of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 1674, 32 L.Ed.2d 234 (1972); *accord United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S.Ct. 948, 955, 63 L.Ed.2d 250 (1980), and should therefore be upheld.

■ Third, C–W argues that by giving deposition testimony about Hartz' marketing practices in *A.H. Robins Co. v. Hartz Mountain Corp.,* Civ. Action No. 78–0142–R (E.D.Va.1979), the Hartz executives waived their right to invoke the fifth amendment. C–W argues that inasmuch as Lovitz and Proud have already given testimony about the company's marketing practices, any further testimony about the details of such practices "would not further incriminate" them. *Rogers v. United States,* 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951). This contention fails not only because "a waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of

circumstances," *Klein v. Harris,* 667 F.2d 274, 288 (2d Cir.1981); *E.P. Hutton & Co. v. Jupiter Development Corp.,* 91 F.R.D. 110, 114 (S.D.N.Y.1981) (Ward, J.), but also because "a waiver of the privilege in one proceeding does not affect a witness' rights in another proceeding." *United States v. James,* 609 F.2d 36, 45 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); *United States v. Miranti,* 253 F.2d 135, 139–40 (2d Cir.1958); *but see Ellis v. United States,* 416 F.2d 791 (D.C.Cir.1969).

■ The Hartz executives note that their testimony in the Robins litigation was given before the grand jury was convened. Because at the time of the Robins case, Hartz personnel apparently saw little or no "possibility of prosecution" and thus did not deem it necessary to invoke the fifth amendment, it would be harsh indeed to hold that the deposition testimony in that case waived their fifth amendment privileges here. Prior disclosure should not be held to constitute a waiver in subsequent proceedings when the reason for apprehension did not exist at the time the witness gave testimony in the first proceeding. *United States v. Miranti, supra* at 140.

C–W has no basis for asserting that any new substantive testimony by Hartz executives would not further incriminate them. As this court has explained, if the initial statement is incriminating, a subsequent statement on the same subject would necessarily be further incriminating because the second statement "would corroborate the earlier statement, making it more difficult for the witness to discount the earlier statement and hence increasing the danger of conviction." *E.F. Hutton & Co. v. Jupiter Development Corp.,* 91 F.R.D. 110, 115 (S.D. N.Y.1981) (Ward, J.). What is more, what C–W is seeking is much more than getting Lovitz and Proud merely to fill in the details of responses they made in prior depositions. *Rogers v. United States, supra* at 374; *Camelot Group, Ltd. v. W.A. Krueger Co., supra* at 1230.

■ Even if, as C–W contends, the Hartz executives had given deposition testimony in civil actions after the grand jury was convened, such testimony should still not be construed as waiving their fifth amendment rights. People who testify at depositions may agree to do so shortly after a grand jury is convened, but may reasonably balk later on as they begin to appreciate the "possibility of prosecution" that may result from grand jury proceedings. It would not be fair to force witnesses to sacrifice their fifth amendment rights because of their initial failure to appreciate the gravity of a grand jury investigation. A witness in a civil case may "refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers may tend to *further* incriminate him," *In re Master Key Litigation, supra* at 294 (emphasis in original); *Usery v. Brandel,* 87 F.R.D. 670, 683 (W.D.Mich.1980), and, as explained above, the possibility of further incrimination certainly exists in this case.

■ While the court is confident that Lovitz and Proud did not waive their fifth amendment privileges, there is no justification for their more or less blanket invocation of the privilege. "As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a 'real danger' of further crimination." *Rogers v. United States, supra* at 374. While the answers to many questions that C–W posed to Lovitz and Proud "could possibly" provide a link in the chain of evidence needed to prove a crime, *In re Master Key Litigation, supra* at 294, many of the questions that the executives refused to answer were wholly innocuous inquiries into such subjects as the basic duties and responsibilities of the two executives and whether certain individuals were employed by Hartz. Because the answers to such questions "could not possibly" provide an incriminating link in the chain of evidence, Lovitz and Proud are ordered to respond to the questions enumerated in the Appendix to this opinion.

In order to avoid unfair surprise, C–W has asked, as part of its motion, that Hartz' top executives not be allowed to testify at trial if the court upholds their refusal to answer any of C–W's questions on fifth amendment grounds. The request seems premature. With the hundreds of volumes of depositions from the Robins litigation that C–W has received, it would be difficult to conclude at this point that the danger of unfair surprise is imminent or grave. However, if at any time before or during trial, it appears that unfair surprise is a serious problem, the court will then take appropriate measures to protect C–W.

Even though corporations cannot assert the privilege against self-incrimination, *Wilson v. United States,* 221 U.S. 361, 31 S.Ct. 538, 55 L.Ed. 771 (1911), the invocation of that privilege by Lovitz, Proud, Leonard Stern, Hartz' Chairman and Chief Executive Officer, Arthur Andersen, Hartz' General Counsel, and other current and former Hartz employees has in effect provided the corporation with a fifth amendment shield. *United States v. Kordel,* 397 U.S. 1, 8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970). This shield has effectively blocked C–W's efforts to get representatives of Hartz to give deposition testimony about an in-house investigation of wrongdoing that Hartz ordered its counsel to conduct in 1979. The Hartz officials whom C–W has deposed with regard to this internal investigation have refused to answer questions about it, asserting variously the fifth amendment, attorney-client privilege, and the work product doctrine.

■ Hartz' in-house investigation apparently included interviews of Hartz employees, factual findings, and a series of legal conclusions. The interviews of Hartz employees conducted by the individuals carrying out the investigation are protected by the attorney-client privilege, and "[c]onsistent with the underlying purposes of the attorney-client privilege, these communications must be protected against compelled disclosure." *Upjohn Co. v. United States,* 449 U.S. 383, 395, 101 S.Ct. 677, 685, 66 L.Ed.2d 584 (1981). The investigation's fac-

tual findings and legal conclusions clearly fall within the compass of the work product doctrine, which provides a qualified, rather than absolute, immunity. *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947); Rule 26(b)(3), F.R.Civ.P.

■ Under the particular facts of this case, C–W has carried its burden of demonstrating that it has a substantial need of the factual findings made in the investigation and that it is unable without undue hardship to obtain the substantial equivalent of the desired information by other means. Rule 26(b)(3), F.R.Civ.P.; *In re Grand Jury Subpoena,* 81 F.R.D. 691, 695 (S.D.N.Y.1979) (Pierce, J.) (work product privilege ordered to give way when witnesses refused to testify absent grant of immunity from prosecution); *Xerox Corp. v. International Business Machines Corp.,* 64 F.R.D. 367, 381–82 (S.D.N.Y.1974) (Edelstein, J.) (work product doctrine overcome by showing that factual information could not be obtained by any other means). C–W has shown that the information explored in the investigation—the alleged illegalities of Hartz employees—is relevant to its theory in this case. Rule 26(b)(1), F.R.Civ.P. In addition, the extraordinary difficulties that C–W has encountered in trying to collect information about the findings of the investigation make clear that C–W cannot obtain the information it seeks except by gaining access to the work product material. In its depositions with Stern, Lovitz, Proud and Andersen, C–W did not receive any information of value regarding the investigation and its findings. In other depositions, C–W's efforts to unearth information about the investigation proved almost as unavailing since other deponents were advised to invoke the work product doctrine in refusing to give testimony about the investigation.

Accordingly, Hartz is ordered to make available to C–W the factual findings of the investigation. Hartz can turn over the findings by either (1) designating someone who will, without invoking the fifth amendment, answer on its behalf about the findings of the investigation or (2) turn over to C–W the actual reported findings. *United States v. Kordel, supra,* 397 U.S. at 8, 90 S.Ct. at 767; *General Dynamics Corp. v. Selb Manufacturing Co.,* 481 F.2d 1204, 1210 (8th Cir.1973), *cert. denied,* 414 U.S. 1162, 94 S.Ct. 926, 39 L.Ed.2d 116 (1974); *In re Grand Jury Investigation,* 599 F.2d 1224, 1231–32 (3rd Cir.1979). In ordering Hartz to make this material available to C–W, the court is not ordering the "disclosure of the mental impressions, conclusions, opinions or legal theories," of Hartz' counsel. Rule 26(b)(3); *Upjohn Co. v. United States, supra,* 449 U.S. at 400, 101 S.Ct. at 688. Nor is the court ordering Hartz to make available "notes and memoranda of ... the oral statements" that Hartz' employees made to the investigators. *Id.* at 399, 101 S.Ct. at 687. All that Hartz is required to do is to reveal, through a witness or document, what the investigation actually found to be the facts.

In its second motion, C–W seeks an order that the deposition of Ralph Levine, C–W's General Counsel, not take place and an order that the deposition of Harry H. Hoyt, Sr., the 87-year old founder of C–W, take place October 8, a week after the discovery deadline, and in C–W's offices, rather than in the offices of Hartz' counsel.

■ After reviewing the parties' affidavits, the court concludes that there are legitimate areas into which Hartz may inquire of C–W's general counsel which are covered neither by attorney-client privilege, nor by the work product doctrine. Levine apparently provides C–W with much non-privileged business advice. Accordingly, Hartz may proceed with his deposition.

■ Inasmuch as Hartz noticed the deposition of Harry Hoyt, Sr. eight weeks in advance and inasmuch as C–W's counsel has furnished no compelling reason why the deposition of Hoyt should be postponed until after the discovery deadline, the deposition should be taken on or before the October 1 deadline. Nor is there any reason to stray from the normal course of discovery in this case and allow Hoyt's deposition to be taken at C–W's offices, rather than at those of deposing counsel. Thus, C–W is

ordered to produce Hoyt for a deposition at the offices of Hartz' counsel before the discovery deadline.

In its first motion, Hartz seeks (1) sanctions against C–W for allegedly having failed to comply fully and promptly with the court's discovery orders, (2) the production of documents that C–W's attorneys have used before and during depositions to refresh witnesses' recollection, and (3) an order allowing Hartz to conduct discovery on the subject of C–W's possible attorneys fees.

As to the sanctions that Hartz seeks, it is clear that both sides have done more than their fair share of footdragging, sandbagging, stonewalling, and hardballing with regard to the production of documents. With the flurry of condemnatory charges and countercharges that counsel have leveled against each other, it is hard to tell whether each side's incomplete and tardy production of documents has been intentional or the result of oversight. Recognizing that thousands of documents have been exchanged and that some documents will inevitably be found and turned over later than appropriate, the court concludes that it would not be proper to order punitive sanctions. Nevertheless, the charges of sandbagging and destruction of documents are profoundly disturbing, and if persuaded that such charges amount to more than the acrimony and cacaphony of contentious counsel, the court will not hesitate to impose even the most severe sanctions on the guilty party.

Under Rule 612, F.R.Evid., courts may in their discretion order counsel to turn over to the opposing party documents used to refresh deponents' recollection. While the use of writings to refresh deponents' recollection may create dangers of selective memory, under the circumstances of this case, where many of the documents C–W's attorneys have shown deponents to refresh their recollection fall within the work product doctrine, it would not be appropriate to order C–W to turn over the documents it has used to refresh its witnesses' recollection.

Hartz' request to compel discovery on the matter of C–W's prospective attorneys fees must also be rejected. If and when the time is ripe to award attorneys fees in this case, opposing counsel will have ample opportunity to scrutinize any attorneys fees request that C–W might make.

In its second motion, Hartz seeks (1) to compel C–W to produce the workpapers its experts used in calculating the amount of damages that C–W alleges to have suffered and (2) to permit Hartz to take the depositions of C–W's experts.

Hartz is in error in asserting that its motion to compel production of the experts' workpapers is controlled solely by Rule 34, and not also by Rule 26(b)(4). *Quadrini v. Sikorsky Aircraft Division,* 74 F.R.D. 594, 595 (D.Conn.1977) (Newman, J.); *United States v. International Business Machines Corp.,* 72 F.R.D. 78, 80–81 (S.D.N.Y.1976) (Edelstein, J.). Rule 26(b)(4)(A) leaves the court considerable discretion as to what additional discovery of experts it will order, and the court concludes that Hartz has shown that it needs more information from C–W as to how C–W calculated its damages. While C–W's response to Interrogatory 44 provides an intelligent, good faith outline of how C–W's experts calculated the firm's damages, the response is nevertheless incomplete for Hartz' purposes because it fails to lay out the numbers that C–W's experts plugged into the formula and the sources of those numbers. C–W is thus ordered to turn over the workpapers of those damages experts that it expects to call as witnesses.

In addition, Hartz asks that it be permitted, pursuant to Rule 26(b)(4)(A), to conduct discovery of the experts that C–W plans to call as witnesses. Such a request should be granted because the experts' testimony will be crucial at trial and because Hartz needs more information from them to prepare for effective cross-examination. *Quadrini v. Sikorsky Aircraft Division, supra* at 595.

In view of the above disposition, there is no reason to grant Hartz' request for a subpoena *duces tecum* requiring production of all documents received, reviewed or created by or on behalf of C–W's experts.

Hartz is ordered to pay the C–W experts that it deposes a reasonable fee for the time spent preparing for and responding to discovery. Because Hartz plans to depose C–W's experts simply to learn about C–W's own case, rather than to obtain assistance in preparing its own case, the court, under Rule 26(b)(4)(C)(ii), will not order Hartz to pay a portion of the costs incurred by C–W in obtaining facts and opinions from the experts.

Lastly, Hartz is ordered to turn over to C–W the depositions that it took of Robins' personnel during the Robins litigation. C–W, however, is to provide the court with assurances that it will protect the confidentiality of the Robins material in a manner consistent with Judge Merhige's order.

IT IS SO ORDERED.