**Kathleen GEORGE, et al., Appellants,**

v.

**Paula EATON, M.D., et al., Respondents.**

**No. WD 42232.**

Missouri Court of Appeals, Western District.

March 6, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1990.

Application to Transfer Denied June 19, 1990.

William H. Pickett, Marcia J. Lamkin, Kansas City, for appellants.

Kirk J. Goza, Mark A. Lynch, Thomas A. Sheehan, Kansas City, for respondents.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

LOWENSTEIN, Judge.

This is a medical malpractice action for damages brought by appellants Kathleen and David George against respondents Paula Eaton, M.D. and Kansas City OB–GYN Physicians, Inc. A jury verdict was returned in favor of respondents. After a Motion for New Trial was overruled, this appeal followed.

Kathleen George began labor for the birth of her second child on October 27, 1984, and was admitted to St. Mary's Hospital at 5:10 p.m. Dr. Eaton was on call for her group that evening, and as such, she had sole responsibility to attend to any obstetric or gynecologic situations or emergencies that might arise, including obstetric patients in labor.

At 6:05 p.m., a nurse telephoned Dr. Eaton and informed her of Mrs. George's arrival, the status of her labor, and the fact she had a low lying placenta early in pregnancy. Although not in the medical records available prior to delivery, Mrs. George had required manual removal of the placenta with her first child. Dr. Eaton testified that knowledge of this history would have made no difference in the management of Mrs. George's delivery.

Dr. Eaton arrived at the hospital sometime around 7:00 p.m. At that time, she was informed that the nurses had forgotten to call an anesthesiologist. Since a normal delivery was expected and since it was unlikely the anesthesiologist on call would arrive before the birth, Dr. Eaton

told the nurse no anesthesia would be needed.

Mrs. George gave birth at 7:24 p.m. The delivery was uneventful and the child was born healthy. Very soon, while Dr. Eaton was obtaining a sample of blood from the umbilical cord and preparing to deliver the placenta, Mrs. George began experiencing pain. There was testimony that this pain was more intense than normally experienced during delivery of the placenta. There was also testimony that, while waiting for the placenta to deliver, Dr. Eaton employed the medical practice of rolling the maternal end of the umbilical cord around a clamp and gently pulling the cord until it is slightly taut. This is known as the Brandt–Andrews maneuver.

At this point, there was a gush of blood from Mrs. George's vagina and a lengthening of the umbilical cord, both signs of placental separation. Assuming the placenta had in fact separated, Dr. Eaton again placed tension on the umbilical cord, at which time the inverted uterus protruded from Mrs. George's vagina, still attached to the placenta. The anesthesiologist was summoned.

Mrs. George was placed under general anesthesia while Dr. Eaton and another physician replaced her uterus into her pelvic cavity by way of laparotomy. The uterus was undamaged and Mrs. George did not require a hysterectomy.

Appellants submit five instances of trial court error: 1) error by not granting a motion for new trial due to the admission of the testimony of Janice Bivens, an obstetric technician, and Rebecca Smith, a registered nurse, on the standard of care applied to physicians; 2) error by not granting a motion for new trial due to permitting respondents to utilize text materials published after October 27, 1984, the date of the alleged malpractice; 3) error by allowing respondents to make prejudicial/inflammatory remarks in closing argument; 4) error by not granting a motion for new trial as the jury verdicts were against the weight of the evidence; and 5) error in denying appellants' motion to compel payment of expert witness fees and refusing to require respondents to pay for the deposition preparation time of appellants' expert witness.

## I.

The Georges' first point on appeal concerns the testimony of two nurses offered on behalf of the defendants.

Nurse Bivens had been an obstetrics technician nurse since 1963, and as such assisted in the delivery of babies. She worked this case, after having seen some 25 to 30 doctors deliver "hundreds" of babies. She testified just after delivery of the child, and before the placenta was expelled, Ms. George began "experiencing more pain than normal." The following questions were asked of Bivens, over the plaintiffs' objections of lack of foundation in calling for expert opinion on the degree of medical care.

Now, Ms. Bivens, in your twenty-six years of experience as an obstetric tech, are you familiar with the process that obstetricians go through in placing a little bit of tension on the cord to ascertain or find out when the placenta has separated?

\*　　\*　　\*　　\*　　\*　　\*

All right. How many doctors, Ms. Bivens, over the twenty-six years that you have been an obstetric technician here in the Kansas City area have you seen place that little bit of tension on the cord?

\*　　\*　　\*　　\*　　\*　　\*

And, Ms. Bivens, in how many of the deliveries that you have observed, those hundreds of deliveries since you became an obstetric technician back in 1963, have you observed doctors place that little bit of tension on the umbilical cord to find out when the placenta is going to come down?

\*　　\*　　\*　　\*　　\*　　\*

Now, Ms. Bivens, did you see Dr. Eaton place any tension on the umbilical cord on the evening of October 27, 1984, while waiting for the placenta?

\*　　\*　　\*　　\*　.　\*　　\*

Ms. Bivens, based upon your experience as an obstetric technician for twenty-six years, was the type of tension that Dr. Eaton was placing on the umbilical cord after Mrs. George began complaining of pain following the delivery of her baby any different than the other physicians you've observed in the other deliveries you've observed?

After the objections were overruled, the witness said she was familiar with "most all" of the doctors placing a certain amount of tension on the umbilical cord while waiting for the placenta. She observed Dr. Eaton place some pressure on the cord, but nothing different from the others she had observed. The following question was answered without objection.

Q. Ms. Bivens, one final question: did you, taking into account all of your years of experience as an obstetric technician, see Dr. Eaton do anything unusual or abnormal or outside of what you had seen as the normal course of conduct in the third stage of labor on October 27th, 1984?

A. No.

Similar testimony was allowed in from Nurse Smith's deposition.

■ The Georges correctly point to the general rule in Missouri requiring medical testimony on the question of whether a physician used the proper degree of care and skill. *Cebula v. Benoit,* 652 S.W.2d 304, 307 (Mo.App.1983). An exception to the rule is recognized where the skill or technique used is within the knowledge of laymen. *Id.* In *Cebula,* the plaintiff sought to use a registered nurse as a medical expert. This court said:

But when non-doctors are offered to testify not to the specific tasks which they personally perform but to the standard of care which a physician must meet in a particular situation, the offeror of that testimony must show the rather unusual circumstances which make the witness competent to know the standard of a profession of which he or she is not a member. The burden is not a light one. As a practical matter, very few non-doc-

tors are likely to have the intimate acquaintance with standards of care recognized by practicing physicians which expert testimony on the subject requires. *Cebula* at 308–09. *See also, Baker v. Gordon,* 759 S.W.2d 87, 91 (Mo.App.1988).

In *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872 (Mo.App.1985), this court reiterated the need for expert testimony to support a claim of a physician's failure to exercise the standard requisite degree of care in a malpractice case. In *Hurlock,* the court held the plaintiff's use of only nurse witnesses did not fall within the exception of *Cebula,* where the issue was proper care for a patient who developed bed sores and complications from a stay in the defendant hospital. *Id.* at 883–84. *See also Mills v. Redington,* 736 S.W.2d 522, 524 (Mo.App.1987).

The appellate court in *Pfeffer v. Kerr,* 693 S.W.2d 296, 304 (Mo.App.1985), upheld the trial court's refusal to let two ambulance attendants testify as to the medical significance of an accident victim's blood pressure. Review of the point is for abuse of discretion. *Id.*

■ Although just on the edge of expressing an opinion, the objected to portions of nurse Bivens' testimony can be characterized as merely factual observations of someone properly in the delivery room. Had the last question about comparison of Eaton's actions being "abnormal or outside ... the normal course of conduct," been preserved, and a proper objection overruled, an abuse of discretion might have occurred. However, that issue is not reached because the only theory of submission of plaintiff's cases, as contained in the verdict directors, "defendant Paula Eaton, M.D., put traction on plaintiff Kathleen George's umbilical cord too soon," goes only to the timing of the traction or pressure on the cord as opposed to pulling too hard and causing the uterus to invert. The plaintiffs can hardly get relief because of improper expert testimony by a non-expert when that testimony only concerned a factor not deemed by them to be the negligence which directly resulted in their damages. The Georges made a conscious trial

decision not to submit on the theory the doctor pulled too hard on the cord. This rendered meaningless any evidence submitted by either side, including that of the nurses, so any error, *i.e.*, qualifications of the nurses, would not be sufficient to cause a reversal, Rule 84.13(b); *Williams v. Venture Stores, Inc.*, 673 S.W.2d 480, 483 (Mo. App.1984). "[W]here evidence has been improperly admitted on issues not submitted to the jury for their determination, such ... evidence does not constitute reversible error." *Wissmann v. Pearline*, 235 Mo. App. 314, 135 S.W.2d 1, 6 (1940).

To further confuse matters, plaintiffs' evidence included that of Kathleen George's husband, also an employee of the hospital where the baby was delivered, to the effect Dr. Eaton actually used a "leaning back motion, such as a water-skiing motion pulling on the cord." Mr. George was the assistant director of radiology of the hospital. Plaintiffs' opening and closing argument several times referred to unnecessary pulling on the cord, but their clear theory was expressed in this closing argument by counsel, "... this inversion of the uterus was because of too soon a pulling.... There shouldn't have been any pulling at all before five minutes, period." The argument was to the effect the doctor's pulling or traction within five minutes of delivery resulted in an inversion. The Georges argued "the obstetrician should wait at least fifteen minutes to see if the placenta separates ... no traction at all during that period of time, that's what the issue is."

Since plaintiffs chose to submit on the "pulling too soon" theory, this made the testimony of nurses Smith and Bivens on the amount of pulling irrelevant. No withdrawal instructions were tendered, and since the Georges have not argued here for a reversal on the grounds of relevancy, but only on the qualifications of the witnesses and lack of foundation, this argument is deemed abandoned. *Jones v. Eagan*, 715 S.W.2d 596 (Mo.App.1986). The Georges also ask for a reversal because Bivens and Smith were not properly listed as expert witnesses by Eaton—this point is also denied.

Any error under this point would, under the theory of submission of the case, not rise to the level which would cause a reversal. Rule 84.13(b); *Williams, supra.*

## II.

The plaintiffs next contend error in allowing respondents to utilize an edition of *Clinical Obstetrics* during cross-examination of plaintiffs' expert witness. Appellants argue irrelevancy in that the edition, written by Carl J. Daverstein, was published in 1987, three years after the events giving rise to this lawsuit.

Although a plausible argument, there was no error. The edition was used only during cross-examination to impeach plaintiffs' expert, Dr. Ralph Benson, and not as substantive evidence. Moreover, the passages read pertained to the Brandt–Andrews maneuver, a medical procedure developed in the early 1930's. The text was used merely to describe a procedure which had been in existence decades prior to this incident. The trial court did not abuse its broad discretion in this matter. *King v. F.T.J., Inc.*, 765 S.W.2d 301, 307 (Mo.App. 1988); *Missouri Commercial Investment Company v. Employers Mutual Casualty Company*, 680 S.W.2d 397, 402 (Mo.App. 1984). Point two is denied.

## III.

The third point contends error in allowing defense counsel, during closing argument, to improperly attack plaintiffs' counsel and to improperly inject his personal beliefs.

"The determination of the prejudicial effect of final argument is a matter within the discretion of the trial court and that discretion will not be disturbed unless an abuse of discretion appears." *Pfeffer*, at 305; *See also, School District of City of Independence, Mo. v. U.S. Gypsum Co.*, 750 S.W.2d 442, 451 (Mo.App.1988). No abuse can be shown in this instance. Only two statements were made; both being brief, isolated and harmless. Point three is denied.

## IV.

The Georges next assign error to the trial court for failing to grant a new trial "when the jury's verdicts were against the weight of the evidence." This court cannot rule on the weight of evidence in a jury tried case. *Castle v. Modern Farm Equipment Co.*, 729 S.W.2d 650, 653 (Mo. App.1987); *Marshall v. Edlin*, 690 S.W.2d 477, 479 (Mo.App.1985).

## V.

The final point claims error in the denial of the Georges' motion to compel respondents to pay for the deposition preparation time of Dr. Benson, their expert witness. The respondents paid Dr. Benson's fee for actual deposition time but refused to pay his time spent in preparation. The Georges' motion before the court for preparation time was denied without explanation. Time sheets in support of the motion were presented, the respondents did not present any information.

The Georges cite Rule 56.01(b)(4)(b) for the proposition that an expert is entitled to compensation for time spent in preparation for a deposition. This rule reads:

(b) A party may discover by deposition the facts and opinions to which the expert is expected to testify. Unless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for responding to discovery by deposition.

Rule 56.01(b)(4)(b).

This Missouri Rule is almost verbatim to Federal Rule 26(b)(4)(c) and Kansas Statute 60–226(b)(4)(c), which reads in pertinent part:

Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery....

Fed.R.Civ.P. 26(b)(4)(c); K.S.A. section 60–226(b)(4)(c). In construing the above language, both courts have held "... an expert might be necessarily required to review material in order to adequately respond to discovery. Such review should be

the financial responsibility of the moving party." *Snow v. Ediger*, Case No. 85–1450–CV–W–1 (W.D.Mo. Dec. 30, 1987); See also *Rhee v. Witco Chemical Corp.*, 126 F.R.D. 45 (N.D.Ill.1989); *Eliasen v. Hamilton*, 111 F.R.D. 396 (N.D.Ill.1986); *Carter–Wallace, Inc. v. Hartz Mountain Industries, Inc.*, 553 F.Supp. 45 (S.D.N.Y. 1982); *Balagna v. Van Doren–Hazard–Stallings*, 720 P.2d 1144 (Kan.App.1986). The rule is intended to circumvent the "unfair[ness of] ... permit[ting] one side to obtain without cost the benefit of an expert's work for which the other side has paid, often a substantial sum." [Citation omitted] *Ediger, supra.* Therefore, under both the Federal Rule and the Kansas Statute, the party seeking to depose an expert witness is to pay that expert a reasonable fee for preparing for the deposition. *Ediger, supra; Rhee, supra; Eliasen, supra; Carter–Wallace, supra; Balagna, supra.*

In comparing the Missouri language to that language used in the Federal Rule and Kansas Statute, the only difference is that Missouri has omitted the wording "time spent in"—instead of reading "a reasonable fee for time spent in responding to discovery," the Missouri Rule reads "a reasonable fee for responding to discovery." This Court finds that even though the wording is in fact different, the intent is the same—to force the deposing party to pay the expert witness' preparation time.

The words "time spent" are superfluous in a reasonable reading of the Rule and are therefore unnecessary. The words "responding to" are all inclusive, referring both to time actually spent in attending a deposition and time spent preparing for a deposition. Moreover, in the Committee Notes of Missouri Rule 56.01, it is stated "[t]he source of paragraph (b)(4) is Rule 26(b)(4) of the Federal Rules of Civil Procedure." It can be assumed by such statement Missouri intended to follow the intent of the Federal Rule.

In sum, this Court holds the party seeking to depose an expert witness is to pay a reasonable fee for time spent in preparation for the deposition, pursuant to Rule 56.01(b)(4)(b). The question of reimburse-

ment is necessarily a factual determination, therefore, this part of the case will be remanded to the trial court for a determination of what amount, if any, constitutes a reasonable fee for the preparation time of Dr. Benson. It should be noted, however, that not every case will compel the payment of expert preparation time. Factors the trial court should consider include the complexity of the case, the proximity of the deposition and trial dates, delays in the discovery process, and any other "compelling circumstances" the court deems important. *Rhee,* at 47–48; *Balagna,* at 1146–47.

That portion of the judgment entered on the verdict for the defendants is affirmed, however, the ruling on reimbursement for preparation time of the plaintiffs' expert is remanded for further consideration not inconsistent with this opinion.