Angela FAIRBANKS,
Plaintiff/Respondent,

v.

Bernard WEITZMAN, Defendant Ad Litem, Defendant/Appellant.

No. ED 74907.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 22, 2000.

Hartstein, Sherman & Agniel, Theodore D. Agniel, Clayton, for appellant.

Greenberg & Pleban, Michael J. Schaller, St. Louis, for respondent.

MARY K. HOFF, Judge.

Bernard Weitzman (Defendant Ad Litem), Defendant Ad Litem for Decedent Michael Loddeke (Decedent), appeals from the judgment entered upon a jury verdict in favor of Angela Fairbanks (Plaintiff) in this personal injury action arising out of a motor vehicle accident. Defendant Ad Litem also appeals from the entry of orders assessing monetary sanctions against him. We affirm the entry of judgment on the jury verdict; affirm in part and reverse in part the assessment of monetary sanctions against Defendant Ad Litem; and remand with instructions.

On May 23, 1995, Decedent's vehicle crossed the center line of a highway and collided with a vehicle in which Plaintiff was a passenger (Plaintiff's vehicle). Decedent, as well as the driver of Plaintiff's vehicle, Charles Ray (Ray), died at the scene of the accident. Ray, who had his own real estate appraisal business, was Plaintiff's employer.

Just prior to the accident Plaintiff's vehicle was second in a line of four close

vehicles travelling at approximately 55 to 60 miles per hour. As Decedent's vehicle began to cross the center line, the first vehicle moved onto the shoulder out of the way of Decedent's vehicle. Decedent's vehicle then collided with Plaintiff's vehicle. The two vehicles behind Plaintiff's vehicle avoided the collision by braking.

In May 1996 Plaintiff filed a one count negligence action against Decedent.[1] Specifically, Plaintiff alleged in part that Decedent "negligently and carelessly allowed his vehicle to cross the centerline and collide with the vehicle in which Plaintiff ... was a passenger." Plaintiff further alleged that, in addition to incurring medical expenses for care of her personal injuries, she "was caused to incur and sustain a loss of income and her ability to work and labor in the future has been forever impaired and diminished."

In his original answer, Defendant Ad Litem generally denied these allegations and did not set forth any affirmative defenses. On November 21, 1997, with leave of court, Defendant Ad Litem filed an amended answer. As affirmative defenses in that answer, Defendant Ad Litem alleged: "that, if [Decedent]'s vehicle crossed the center line before impact with the other vehicle, it was due solely to [Decedent]'s unforeseeable loss of consciousness while driving his motor vehicle. Further, [Decedent] had no[ ] duty to Plaintiff under those circumstances"; and "due to [Decedent]'s unforeseeable loss of consciousness, [Decedent] may not be charged with any act of negligence or fault in this matter."

In the course of the pretrial proceedings the trial court required Defendant Ad Litem to pay certain amounts as "costs associated solely [with] Plaintiff's expenses re/ the affirmative defense of [Decedent's] loss of consciousness, and [Decedent]'s medical conditions which reasonably led to loss of consciousness."

On July 22, 1998, the jury returned a $125,000.00 verdict in favor of Plaintiff. On August 17, 1998, the trial court entered judgment in accordance with that verdict, assessing costs against Defendant Ad Litem. On August 17, 1998, as reflected on its docket sheet, the trial court also resolved Plaintiff's then-pending motions for payment of costs and expenses by requiring Defendant Ad Litem to pay a total of $17,297.00, for Plaintiff's costs and expenses pertaining to Decedent's loss of consciousness.

In his "Motion for New Trial and for Remittitur" (Motion for New Trial), Defendant Ad Litem argued, in relevant part, that the trial court erred in precluding evidence and argument "that the sole cause, or a contributing factor, of the accident was ... Ray's negligence in failing to maintain a careful look out just before the accident"; "in failing to preclude evidence of Plaintiff's speculative wage loss claim"; and "in assessing costs and expenses" separate from and in conflict with those in the judgment. The trial court denied this motion on September 16, 1998.

The trial court's docket sheet reveals the filing by Plaintiff of a "Motion to Amend This Cts 8/17/98 Order Respecting 1st, 2nd & Amended 3rd Mtns for Payment of Costs & Expenses to Include Payment of Interest" (Motion to Amend), along with a notice of hearing. On September 16, 1998, the trial court sustained Plaintiff's Motion to Amend by requiring Defendant Ad Litem to pay interest from August 17, 1998, to the date of payment at the annual rate of nine percent on the $17,297.00 in additional costs and expenses awarded by the trial court's August 17, 1998 order.

Defendant Ad Litem filed a "Motion for Rehearing and Reconsideration of Plaintiff's Second and Amended Third Motions for Costs and Expenses, and for Orders Nunc Pro Tunc Regarding the Judgment

---

1. Along with the Petition, Plaintiff filed a Motion for Appointment of Pamela Loddeke, Decedent's spouse, as Defendant Ad Litem; and

the trial court granted that motion. Subsequently, Bernard Weitzman was substituted as the Defendant Ad Litem.

and Court Order of August 17, 1998" (Motion for Rehearing). On September 16, 1998, the trial court amended the Judgment by interlineation, by inserting August 17th as the date of Judgment; and otherwise denied the Motion for Rehearing.

This appeal followed.

In his first point, Defendant Ad Litem contends the trial court erred in sustaining Plaintiff's objections to questions of Plaintiff's witnesses regarding the fault of the driver of Plaintiff's vehicle, Charles Ray, and in sustaining Plaintiff's objection to Defendant Ad Litem's closing argument regarding Ray's fault. Defendant Ad Litem urges he is entitled to develop evidence and argue the sole cause of the accident was someone other than Decedent, even a non-party, because Plaintiff has the burden of proof on Decedent's negligence.

■ Defendant Ad Litem first contests the sustaining of objections to certain questions he posed during his cross-examination of Plaintiff and Chris Pisane, the driver of the vehicle immediately behind Plaintiff's vehicle. While cross-examining Plaintiff, Defendant Ad Litem asked "[w]ould it be fair to say that it's dangerous to be traveling that closely behind a car, one car length behind a car, when you're traveling 55 to 60 miles an hour?" and "[d]o you know whether or not … Ray had a clear, unobstructed view of traffic coming the opposite direction on that stretch of road?" Plaintiff's counsel timely objected to these questions on the ground Defendant Ad Litem was trying to raise Ray's fault in causing this collision when Defendant Ad Litem had not brought Ray into the case. The trial court sustained the objections and Defendant Ad Litem did not give an offer of proof.

■ The admission of evidence is within the sound discretion of the trial court. *Pierce v. Platte–Clay Elec. Co-op., Inc.*, 769 S.W.2d 769, 775 (Mo. banc 1989). We do not disturb the trial court's decision regarding the admission of evidence absent a clear abuse of discretion. *Id.; accord Meckfessel v. Fred Weber, Inc.*, 901 S.W.2d 335, 341 (Mo.App. E.D.1995) (when evidence is excluded, the issue is whether the trial court abused its discretion in excluding it). Moreover, the trial court has broad discretion in controlling the scope and content of cross-examination. *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876, 884 (Mo. banc 1985). To preserve the exclusion of evidence for review on appeal, the proponent of the evidence must, with few exceptions, make an offer of proof at trial demonstrating why the evidence is relevant and admissible. *Liszewski v. Union Elec. Co.*, 941 S.W.2d 748, 751 (Mo.App. E.D.1997).

■ The trial court did not abuse its discretion in sustaining Plaintiff's objections to this cross-examination. Even assuming an offer of proof was not necessary, the questions sought information to which Plaintiff could only respond with speculation. A witness should not be allowed to testify about things in which the witness indulges in mere speculation, guess and conclusions. *Kees v. Canada Dry Ginger Ale*, 239 Mo.App. 1080, 199 S.W.2d 76, 78 (W.D.1947). That is all Plaintiff could base her answers on because she was not driving the vehicle that collided with Decedent's vehicle. The driver of Plaintiff's vehicle, Ray, was the only person who could properly respond to these questions.

■ Pisane was able to stop on the shoulder to avoid the accident. During his cross-examination, Defendant Ad Litem asked Pisane "[i]s there anything about that shoulder that would have prevented cars that wanted to pull over from pulling over?" Before Plaintiff's objection, Pisane answered "[n]o." Plaintiff then objected to the question, counsel discussed the matter with the trial court at the bench, and the trial court sustained the objection. Defendant Ad Litem now challenges that ruling. The trial court, however, was not

asked to and did not strike the answer or instruct the jury to disregard the answer. Thus, Pisane's answer was before the jury and we will not further address the purported exclusion of that testimony.

■ Defendant Ad Litem also challenges a ruling of the trial court during closing argument. This challenge focuses on the following portion of the closing by Defendant Ad Litem's counsel:

> Please, I ask you, assess only the damages for [Plaintiff]. If you get to this point, and I don't think that you should, if you go to that point where you want to assess some damages, assess only the damages that you believe are related to [Decedent]'s negligence and for nobody else's negligence. [Plaintiff] testified that [the driver of the first of the four vehicles] swerved out of the way, and that [Decedent's] car was completely in her lane just before the accident. But ... Pisane today said that [Decedent]'s car was gradually moving into the lane, and [the driver of the first of the four vehicles] said that she moved her car gradually over to the side of the road.... Pisane said today that he was right behind [Plaintiff's vehicle]. He saw – he could see [Decedent]'s car start to come over to the right. He put on his brakes as soon as he saw – as soon as he saw [Decedent]'s car coming over.
>
> [PLAINTIFF'S COUNSEL]: Your Honor, I make an objection. We both know where [Defendant Ad Litem's Counsel] is going with this.
>
> THE COURT: Don't go there [Defendant Ad Litem's Counsel].
>
> [DEFENDANT AD LITEM'S COUNSEL]: Okay, Judge.

■ By saying "Okay, Judge," Defendant Ad Litem acquiesced in whatever disposition the trial court made of the inadequate objection asserted by Plaintiff's counsel. "[I]t is necessary to object at trial in order to preserve a complaint concerning closing argument for appellate review." *Heitner v. Gill*, 973 S.W.2d 98, 103 (Mo.App. S.D.1998). Because Defendant Ad Litem "did nothing whatsoever to" bring his position regarding this closing argument promptly to the trial court's attention, the matter has not been preserved for appellate review. *See McMahan v. Missouri Dept. of Social Servs., Div. of Child Support Enforcement*, 980 S.W.2d 120, 127 (Mo.App. E.D.1998).

Point one denied.

In his second point, Defendant Ad Litem contends the trial court erred in denying his motion to strike Plaintiff's wage loss claim and in overruling his hearsay objection to testimony regarding Plaintiff's oral employment agreement with Ray. Defendant Ad Litem argues this claim was improperly based on hearsay, speculation, and "an improper, non-alleged theory of negligent interference with an employment contract that failed to state a claim on which relief could be granted."

■ A personal injury plaintiff "may prove a resulting loss of time, and a consequent loss of personal earnings or wages as an item of special damages" and may recover for loss of future earnings due to impairment of the plaintiff's earning capacity. *Seymour v. House*, 305 S.W.2d 1, 3 (Mo.1957). While we have not been directed to or located a Missouri case in which a personal injury plaintiff sought lost wages in a situation where the employer does not survive the incident causing injury to the plaintiff, we are not convinced an injured plaintiff in such circumstances is not entitled to recover lost wages. Indeed, we found an injured plaintiff who voluntarily failed to return to her employment, because "she knew her employer would not be able to hold her position open" while plaintiff recuperated, presented evidence of lost wages sufficient to go to the jury. *McPherson v. Bi–State Dev. Agency*, 702 S.W.2d 129, 132 (Mo.App. E.D.1985). Implicitly, *McPherson* recognizes an injured plaintiff who fails voluntarily to return to her employer after the recuperation period may seek lost wages. In light of *McPherson*, we conclude an

injured plaintiff, who is unable to return to work due to the employer's non-existence, is not prohibited from seeking an award of lost wages as part of a damages claim in a negligence action. Therefore, we find the trial court did not err in considering the presentation of evidence of Plaintiff's lost wages under the circumstances of this case.

To recover for such losses, the evidence of value must be reasonably certain and must not be based upon speculation, or, in other words, "must afford a basis for a reasonable estimate of the amount of the loss." *Seymour*, 305 S.W.2d at 3–4.

> [I]f one cannot measure the damages exactly, the law only requires that the evidence, with such certainty as the evidence will permit, lay a foundation to enable the jury to make a fair and reasonable estimate.... A plaintiff need only produce the best evidence available such that it is sufficient to afford a reasonable basis for estimating the damages.

*Weindel v. DeSoto Rural Fire Protection Ass'n, Inc.*, 765 S.W.2d 712, 714 (Mo.App. E.D.1989) (claim for property loss due to defendant's negligence in responding to mobile home fire). Evidence may include the injured plaintiff's earnings before the injury and after the injury. *See McDonald v. Missouri–Kansas–Texas R.R.*, 401 S.W.2d 465, 470–71 (Mo.1966). In *Franklin v. Byers*, 706 S.W.2d 230, 232 (Mo.App. W.D.1986), testimony of " 'average earnings' by a commission salesman [was] admissible to prove lost income by reason of personal injury."

Before the accident, Plaintiff had worked for approximately six months as a research assistant at an appraisal company at $15,000 per year. She then worked for over a year at an advertising agency. In May 1995, Plaintiff began working as an appraisal assistant for Ray, who owned his real estate appraisal company. From the accident on May 23, 1995, until late July 1995, Plaintiff could not work. She then began working for Reliable Research, a real estate appraisal and title company, as an assistant in the appraisal department for approximately two years at $16,000 per year. In October 1997, for approximately six months, Plaintiff was a loan officer at Citizens Mortgage, receiving an average of $3,000 per month in commissions. The month before trial, Plaintiff began working for Creve Coeur Mortgage in Florida on a straight commission basis. In her first month there, she earned $4,000.

With respect to her employment with Ray, Plaintiff testified that, but for Ray's death, she would have remained employed with him.

Plaintiff testified Ray agreed to pay her $1,500 per month or a total of $18,000 per year in salary, plus 25% to 50% commissions (depending on her experience) for ten appraisals per week, with each appraisal costing from $150 to $275. Based on this information, she calculated her wage loss as follows: $1500 per month in salary (at $18,000 per year) or a $2,000 per year wage loss when compared to her employment with Reliable Research (at $16,000 per year), plus a $3,000 total lost salary and $100 per week in lost commissions for the two months she could not work, plus the loss of commissions calculated at 30% commission on three appraisals of $200 per week or $180 per week in commissions or a loss of $9,360 per year.

Plaintiff had no documents showing what her pay from Ray was going to be. She estimated she would be getting "[m]aybe two or three [appraisals] a week." Plaintiff admitted she had not yet been paid by Ray at the time of the accident because she had just begun working for him.

We find under the unusual circumstances of this case that this testimony satisfies the reasonable certainty test for presenting a wage loss claim.

Even if, assuming arguendo, the trial court erred in failing to sustain

Defendant Ad Litem's hearsay objection to Plaintiff's agreement with Ray or in failing to prohibit evidence of the wage loss, we do not find Defendant Ad Litem was prejudiced. We will not reverse a judgment because of error which is not prejudicial to the appellant. *Lewis v. Vermont Am. Corp.*, 870 S.W.2d 909, 913 (Mo.App. E.D. 1994). To assess the existence of prejudice sufficient to support reversal, we compare what did occur with what would have occurred had the trial court granted appellant the requested relief. *Nachtweih v. Maravilla*, 861 S.W.2d 164, 170 (Mo.App. E.D:1993). The burden to establish prejudice is on the complaining party. *Howe v. ALD Servs., Inc.*, 941 S.W.2d 645, 655 (Mo.App. E.D.1997). Here, Defendant Ad Litem has not satisfied that burden.

 Importantly, "[t]he assessment of damages is primarily the function of the jury." *King v. Unidynamics Corp.*, 943 S.W.2d 262, 268 (Mo.App. E.D.1997). Due to the importance of weighing witness credibility and testimony in setting damages, the determination as to the amount of damages awarded in a personal injury action falls primarily within the discretion of the jury. *Wright v. Long*, 954 S.W.2d 470, 472 (Mo.App. W.D.1997). A jury's damage award may be upheld if substantial evidence supports the verdict and the damages were awarded on any rational assessment of the evidence. *Moore v. Missouri Pacific R.R.*, 825 S.W.2d 839, 846 (Mo. banc 1992).

In light of the evidence of approximately $40,000 in medical expenses incurred by Plaintiff; evidence of Plaintiff's pain and suffering over a period of years, and the total amount of the verdict, we find no prejudice to Defendant Ad Litem in the admission of testimony, evidence, and argument regarding Plaintiff's claim for lost wages.

Point two denied.

In his third point, Defendant Ad Litem argues the trial court erred in: entering sanctions against him on November 4, 1997, April 13, 1998, August 17, 1998, and September 16, 1998, by requiring him to pay Plaintiff's costs and expenses associated with Decedent's loss of consciousness; ruling that the naming of the medical examiner as a defense witness one month prior to the first trial setting raised a late affirmative defense that must be pleaded in an amended answer; and refusing to order Plaintiff to pay Defendant Ad Litem's experts' deposition time and preparation time. In support of this point Defendant Ad Litem urges the issue of Decedent's loss of consciousness was not an affirmative defense and was, therefore, timely raised; and Defendant Ad Litem violated no rules, statutes, or court orders for which sanctions could be entered.

The record relevant to this point, reveals the following. In his original interrogatory answers, filed in March 1997, Defendant ad Litem stated he had not yet determined expert witnesses to be called at trial; "reserve[d] the right to call as expert witnesses any health care providers who have examined, treated and/or tested Plaintiff"; and did not mention Decedent's health care providers.

On August 5, 1997, the court set the case for jury trial on October 28, 1997, and October 29, 1997.

In September 1997 Defendant Ad Litem learned that, before the collision, drivers of two of the non-colliding vehicles saw Decedent slumped to the left against the driver's door. Dr. Mary Case, the medical examiner who performed an autopsy on Decedent, told counsel for Defendant Ad Litem that, if such testimony was presented, "it was her opinion that [Decedent] likely lost consciousness due to a cardiac event" in light of her determination Decedent had a diseased heart. By supplemental interrogatory answer served in late September 1997, Defendant Ad Litem identified Dr. Case as an expert witness "concerning the cause of the accident, [Decedent's] condition before and after the

accident, and her examination of [Decedent]."

On September 30, 1997, Plaintiff filed a notice of deposition of Dr. Case, and Defendant Ad Litem filed notices of deposition of the two drivers. At her deposition, which occurred on October 10th and 16th, after the depositions of the two drivers, Dr. Case opined that, if Decedent became incapacitated at the wheel of his vehicle as witnesses noticed, the incapacitation or loss of consciousness was due to cardiac arrhythmia resulting from coronary artery disease.

On October 10, 1997, the trial court moved the trial date to December 8, 1997, and December 9, 1997.

On October 20, 1997, Plaintiff moved to strike Dr. Case as an expert witness.[2] In this motion to strike, Plaintiff urged Defendant Ad Litem had never admitted Decedent crossed the center line and drove on the wrong side of the road, so there was "no basis for admitting Dr. Case's avoidance testimony at trial"; Defendant Ad Litem had not pleaded "an affirmative defense of unfor[e]seeable loss of consciousness/incapacity," which was "a condition precedent to the relevance and admissibility of Dr. Case's opinions"; and, if Defendant Ad Litem was permitted to assert such an affirmative defense, Plaintiff needed to conduct extensive discovery. After hearing arguments, on October 21, 1997, the trial court sustained Plaintiff's motion to strike and denied as moot Plaintiff's Motion to Compel.

On October 24, 1997, Plaintiff filed a Tax Memorandum asking that the $508.75 reporting charge for Dr. Case's October 1997 deposition be taxed in favor of Plaintiff.

In late October 1997, Defendant Ad Litem served a second supplemental expert witness interrogatory answer and disclosed Dr. Christopher Long, a toxicologist, as another expert.

On November 3, 1997, Defendant Ad Litem moved to rehear Plaintiff's motion to strike. Defendant Ad Litem contended he had consistently denied Decedent was at fault by denying Plaintiff's allegation Decedent had "negligently and carelessly allowed his vehicle to cross the centerline," and therefore Dr. Case's opinions regarding the reasons for Decedent crossing the center line were relevant. Moreover, Defendant Ad Litem urged, Plaintiff had not contested the designation of Dr. Case as an expert when it was first made in September 1997; or when the two drivers who saw Decedent slumped over were deposed on October 3, 1997, prior to Dr. Case's deposition; or when Dr. Case's deposition began on October 10, 1997; or when Dr. Case's deposition was concluded on October 16, 1997.

In her response to the motion to rehear, filed on November 4, 1997, Plaintiff in relevant part asked that the motion to rehear be denied or

> Alternatively, ... Plaintiff respectfully prays this court for the entry of an order requiring Defendant [Ad Litem] to pay all of Plaintiff's costs and expenses associated with obtaining [Decedent]'s medical records and specimens, Plaintiff's consultant's fees and expenses concerning [Decedent]'s physical or mental condition, Plaintiff's expert witness and rebuttal witness' fees and expenses concerning [Decedent]'s physical and mental condition, and all of Plaintiff's other fees, costs and expenses related to [Decedent]'s physical or mental condition or in rebutting the opinions of Defendant [Ad Litem]'s expert witnesses.

No citation of authority or indication of such expenses was provided with this request.

---

2. Plaintiff also filed "Plaintiff's Motion to Compel Identification of [Decedent]'s Medical Providers, to Compel Execution of Authorizations Permitting Release of [Decedent]'s Medical Records to Plaintiff's Counsel and to Enforce the Subpoena Served upon Mary Case, M.D." (Motion to Compel).

Additionally, on November 4, 1997, Plaintiff filed a "... Motion to Strike Christopher Long, M.D. [sic] As Defendant [Ad Litem]'s Expert Witness and For Sanctions" (first motion for sanctions). With respect to the sanctions request, Plaintiff stated "that the dilatory and calculated conduct of Defendant [Ad Litem] as [set forth in the motion regarding the late endorsement of Dr. Case and belated disclosure of Dr. Long] has caused Plaintiff needlessly to devote attorney time and incur expenses to resist same." Therefore, Plaintiff asked

for the imposition of sanctions against Defendant [Ad Litem] including, but not limited to, striking Defendant [Ad Litem]'s pleadings, entering judgment for Plaintiff on the issue of liability, awarding Plaintiff her attorney's fees and expenses incurred in responding to Defendant [Ad Litem]'s endorsement of Dr. Long, for costs, additional attorney's fees, and such other and further relief as this court deems just and proper.

On November 4, 1997, the trial court filed a memorandum resolving several pending motions, including Defendant Ad Litem's motion to rehear and Plaintiff's first motion for sanctions. First, the trial court set aside its order, dated October 21, 1997. Then the trial court permitted Defendant Ad Litem to name Dr. Case as an expert, and gave Defendant Ad Litem until December 4, 1997, to file an amended answer "raising affirmative defenses."[3] Next, the trial court granted Plaintiff's motion to compel, requiring Decedent's spouse to execute authorizations for "all medical records of [D]ecedent ... for the previous 10 years" and requiring Defendant Ad Litem to make available to Plaintiff "all specimens and samples" of Decedent in Dr. Case's possession, "subject to Dr. Case's chain of custody and other requirements." Fourth, the trial court gave Defendant Ad Litem until December 4,

1997, to withdraw Dr. Long as an expert or to make Dr. Long available for deposition at a mutually convenient time for the parties. The trial court also ordered Defendant Ad Litem

to pay Dr. Case's fee for $^{10}/_{10}$ + 10/16/97 depo[sition] and further order[ed] Def[endant Ad Litem] to deposit $2500 into the court's registry for costs associated solely w[ith] Plaintiff's expenses re/ the affirmative defense of [Decedent]'s loss of consciousness, and [Decedent]'s medical conditions which reasonably led to loss of consciousness. The court may order payment of additional costs in excess of $2500.00.

\* \* \*

The court will pay Plaintiff's above[-]mentioned reasonable expenses as submitted by Plaintiff up to the $2500 deposit. Plaintiff may call for oral argument of [payment] of additional reasonable expenses above $2500. Defendant [Ad Litem] may not argue reasonableness of said expenses until trial or at time of settlement.

Additionally, the trial court required discovery completed by April 7, 1998, and directed the parties to appear in April 1998 for a trial setting in May or June 1998. The discovery deadline was subsequently extended to May 5, 1998. The order does not cite any rule or case law supporting the payment provisions and does not explain the reasons or basis for the payment provisions.

The record reflects that Dr. Case's fee for the October 1997 deposition was $2,250.00 ($450.00 per hour for 5 hours). It is undisputed that Defendant Ad Litem paid this fee.

On January 6, 1998, Defendant Ad Litem deposited the sum of $2,500.00 in the registry of the trial court.

---

**3.** In her response to the motion to rehear, Plaintiff had stated Defendant Ad Litem had "not sought to amend his Answer and plead the affirmative defense of unforeseeable loss of consciousness [and a]bsent such a pleading, there is no basis to submit evidence of unforeseeable loss of consciousness at trial."

On April 3, 1998, Plaintiff filed her "First Motion for Payment of Costs" (First Motion), seeking monetary relief pursuant to the November 4, 1997, order. Specifically, Plaintiff sought a total of $1,509.05 to cover the court reporter invoices for deposing three of Defendant Ad Litem's experts: Mary Case, M.D. ($508.75), Ronald Krone, M.D. ($565.90), and Christopher Long, PhD. ($434.40). These depositions, Plaintiff urged, "concerned the affirmative defense of loss of consciousness and/or [Decedent]'s physical or mental condition." Defendant Ad Litem opposed the payment of the deposition expenses of Dr. Case and Dr. Long. The latter because his testimony pertained to the alcohol and any other medications or drugs in Decedent's body, rather than to Decedent's loss of consciousness; and the former because Defendant Ad Litem had "paid $2,250 for Plaintiff's taking the five hour deposition of Dr. Case" and Dr. Case "testified solely as an examining physician, not as an expert retained by Defendant Ad Litem after litigation was initiated."

On April 13, 1998, the trial court, in relevant part, sustained Plaintiff's First Motion with respect to the depositions of Dr. Case and Dr. Krone and directed the clerk to issue a check in the amount of $1,074.65 from the $2,500.00 previously deposited into the registry of the trial court. The trial court further reserved ruling on the First Motion to the extent it was directed to Dr. Long's deposition "until it can .be determined whether Dr. Long's testimony relates to Defendant [Ad Litem]'s affirmative defense of unforeseeable loss of consciousness." The $1,074.65 was paid to Plaintiff's counsel on April 15, 1998.

On June 30, 1998, Plaintiff filed her Second Motion for Payment of Costs and Expenses (Second Motion), seeking monetary relief pursuant to the November 4, 1997, order. Specifically, by this Second Motion, Plaintiff sought

an order causing the balance of the funds on deposit with the court ($1,425.35) to be paid ..., for an order directing the Defendant Ad Litem to pay ... the sum of $8,210.15 which together with the $1,425.35 on deposit with the court totals $9,635.50, for the entry of an order compelling Defendant Ad Litem to deposit into the registry of this court the additional sum of $4,000.00 to be reserved for the payment of such additional costs and expense that Plaintiff may incur concerning the affirmative defense of [Decedent]'s loss of consciousness and/or [Decedent]'s medical conditions which reasonably led to loss of consciousness, and for such other and further relief as this court may deem just and proper.

This request was based on the cost of retaining rebuttal witnesses Jeffrey Saffitz, M.D., Ph.D., a cardiopathologist, and Philip Ludbrook, M.D., a cardiologist. Plaintiff reported that Dr. Saffitz charged $400.00 per hour and had provided services for 15.5 hours through June 15, 1998, exclusive of time spent in deposition, totaling $6,200.00. Dr. Ludbrook reportedly spent 8.5 hours on this case through June 20, 1998, exclusive of time spent in deposition, at an hourly rate of $375.00 for a total of $3,187.50. Additionally, Plaintiff sought $117.50 for a copy of Dr. Saffitz's deposition and $130.50 for a copy of Dr. Ludbrook's deposition. Therefore, Plaintiff sought a total payment by Defendant Ad Litem of $9,635.50 for rebuttal expert witness services pertaining to the affirmative defense of loss of consciousness and/or Decedent's physical or mental condition.

After trial, on July 24, 1998, Plaintiff filed another Tax Memorandum seeking a total of $1,278.15 for billings from court reporters pertaining to depositions. In particular, this total consisted of the following deposition expenses: Dr. Long ($434.40); Dr. Saffitz ($117.50); Dr. Ludbrook ($130.50); Richard Lehman, M.D. (Part I) ($269.85); Dr. Lehman (Part II) ($116.40); and Dr. Case ($211.50).

On July 29, 1998, Plaintiff filed her third motion for payment of costs and expenses (Third Motion) seeking payment by Defen-

dant Ad Litem of a total of $4,345.90, pursuant to the November 4, 1997, order. This total consisted of: $1,200.00 for Dr. Saffitz's time to travel to court and to testify at trial; $2,500.00 for Dr. Ludbrook's time "spent in final preparation for trial, testifying at trial and in travel time" to court; $211.50 for court reporter charges for the deposition of Dr. Case taken the evening of the first day of trial after she reported she was unable to attend trial; and the $434.40 in court reporter charges assessed for Dr. Long's deposition that had been taken under advisement by the trial court. Plaintiff then filed an Amended Third Motion for Payment of Costs and Expenses (Amended Third Motion). The only difference between the original and this Amended Third Motion is an increase in Dr. Ludbrook's additional compensation from $2,500.00 to $6,250.00 (including the $2,500.00 for time traveling and testifying at trial, plus $3,750.00 for ten hours of trial preparation). Therefore, the Amended Third Motion sought a total of $8,095.90, consisting of $1,200.00 for Dr. Saffitz, $6,250.00 for Dr. Ludbrook; $211.50 for Dr. Case's July 1998 deposition, and $434.50 for Dr. Long's deposition.

In his response to the Amended Third Motion, filed on July 31, 1998, Defendant Ad Litem asked the trial court

> to deny Plaintiff's Second and Third Motions for Payment of Costs and Expenses in their entirety; to set aside the Court's November 4, 1997 Order as to payment of costs and expenses; to order Plaintiff to pay Defendant Ad Litem $2,250.00 for the deposition fee of Dr. Case; to order Plaintiff to pay Defendant Ad Litem $1,074.65; to return to Defendant Ad Litem $1,425.35 representing the remainder of the $2,500.00 deposit in the Court's registry; and to enter such Orders as the Court deems just and proper.

In its August 17, 1998, docket entry, the trial court resolved Plaintiff's pending motions for payment as follows:

> That part of the initial motion related to Dr. Long's deposition (also sought in the Amended Third Motion) is denied as Dr. Long's testimony did not relate to the affirmative defense but rather to the toxicological issue. The Second Motion (dated 6/30/98) is sustained in the amount of $9,635.50. The Amended Third Motion (dated 8/3/98) is sustained as to all items but Dr. Long's court reporting charges, totalling $7,661.50. The Clerk is ordered to remit the balance on deposit of $1,425.35.... The Deft Ad Litem is ordered to remit the balance of $15,871.65....

On this date the trial court also entered judgment on the $125,000.00 verdict in favor of Plaintiff and taxed costs against Defendant Ad Litem.

In his Motion for Rehearing, Defendant Ad Litem urged the trial court's judgment and order were contrary to Rule 56.01(b)(4)(b) and authority previously cited by Defendant Ad Litem; Plaintiff failed to show a "manifest injustice" with respect to the costs associated with the depositions of Dr. Case, Dr. Long, and Dr. Krone; and the assessment of costs exceeds the trial court's jurisdiction. Defendant Ad Litem argued in part that, because the court had excluded payment for Dr. Long's deposition in that it addressed toxicological issues, other experts' expenses should be reduced to the extent they address those issues. Defendant Ad Litem further pointed out the existence of two different dates on the second page of the Judgment and asked that they be changed to reflect August 17, 1998, as the date of Judgment and asked the trial court to merge the August 17, 1998, order addressing Plaintiff's Second and Amended Third Motions with the Judgment. Finally, Defendant Ad Litem asked the court to order Plaintiff to pay the expenses of Dr. Long and Dr. Krone in preparing for and participating in their depositions.

As noted earlier, Plaintiff filed a Motion to Amend seeking interest on the sanctions assessed August 17, 1998.

Except for correcting the date on the Judgment, the trial court denied Defendant Ad Litem's Motion for Rehearing. In granting Plaintiff's Motion to Amend, the trial court specifically provided:

Plaintiff's Motion to Amend is sustained and Deft Ad Litem is Ordered to pay interest on $17,297.00, at 9% per annum, from 8/17/98 through the date of payment. The Circuit Clerk is ordered to remit $1,425.35 ... on Sept. 23, 1998 and the Deft Ad Litem may challenge this payment prior to that date by requesting a writ of prohibition.

In order to review the trial court's challenged payment rulings, we must ascertain the basis for the provisions in the November 4, 1997 order that required Defendant Ad Litem to make certain specified and future payments. The order itself does not set forth either the reason for or the authority supporting those provisions, which we will refer to as sanctions provisions.

■■■ In each of her three payment motions, Plaintiff states that the sanctions provisions are "because of Defendant [Ad Litem]'s delay in investigating this case, in pleading his affirmative defense of unforeseeable loss of consciousness, and in naming expert witnesses." The record does not contain an express court order prior to November 4, 1997, that was violated by any of this alleged conduct by Defendant Ad Litem. Furthermore, we have been directed to no authority permitting the imposition of monetary sanctions against a litigant simply due to the litigant's delay in investigating the case or pleading an affirmative defense.[4] There is, however, authority for the imposition of sanctions for a litigant's failure timely to disclose expert witnesses. *See, e.g., Wilkerson v. Prelutsky*, 943 S.W.2d 643, 647–50 (Mo. banc 1997).

At the time the trial court entered its November 4, 1997 sanctions provisions, there were two sanctions requests pending: one as part of Plaintiff's response to Defendant Ad Litem's motion to rehear the striking of Dr. Case as Defendant Ad Litem's expert witness and one in Plaintiff's first motion for sanctions. The former sought in part an order requiring Defendant Ad Litem to pay all of "Plaintiff's consultant's fees and expenses, ... Plaintiff's expert witness and rebuttal witness' fees and expenses, ... and all of Plaintiff's other fees, costs and expenses related to [Decedent]'s physical or mental condition or in rebutting the opinions of Defendant [Ad Litem]'s expert witnesses." The latter sought relief focusing on Defendant Ad Litem's recent disclosure of Dr. Long.

Rule 56.01(b) permits a party to discover by interrogatory the identity and other specified information regarding both retained and non-retained experts who will testify at trial. The Rules also require a party responding to interrogatories seasonably to supplement an interrogatory answer regarding "the identity of each person expected to be called as an expert witness at trial and the general nature of the subject matter on which the expert is expected to testify." Rule 56.01(e)(1)(B).

It is not disputed that Plaintiff served Defendant Ad Litem with an expert witness interrogatory and that Defendant Ad Litem supplemented his answer to that interrogatory to disclose Dr. Case and Dr. Long as experts who would testify at trial. One supplementation occurred one month before the first trial date and the second one occurred approximately one month before the second trial date.

■■■ Under Rule 61.01, a trial court has broad discretion "to sanction a party for failure to answer discovery requests or for providing incomplete or evasive re-

---

4. We conclude the sanctions provisions are not authorized by Rule 55.03(c) because neither of the then-pending sanctions requests complies with the requirements of Rule

55.03(c)(1)(A) and, if considered as imposed on the trial court's own initiative under that Rule, the trial court did not comply with the requirements of Rule 55.03(c)(1)(B).

sponses" to discovery requests. *Zerjav v. Schneider,* 998 S.W.2d 44, 45 (Mo.App. E.D.1999). The imposition of sanctions may also be considered when a litigant fails seasonably to supplement interrogatory answers. *State ex rel. Missouri Highway and Transp. Comm'n v. Pully,* 737 S.W.2d 241 (Mo.App. W.D.1987). We conclude the trial court's sanctions provisions in the November 4, 1997, and subsequent related payment orders were based on Defendant Ad Litem's failure seasonably to supplement his expert witness interrogatory answer.

A trial court has discretion in the choice of remedies in response to the failure to disclose evidence or witnesses during discovery. *Wilkerson,* 943 S.W.2d at 648. We may disturb the trial court's discovery sanctions decision "only upon a clear showing of abuse of discretion." *Zerjav,* 998 S.W.2d at 45. "Judicial discretion is abused when the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Wilkerson,* 943 S.W.2d at 648 (internal quotation marks omitted) (quoting *Anglim v. Missouri Pacific R.R.,* 832 S.W.2d 298, 303 (Mo. banc), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992)). We have previously concluded "[a]ny Rule 61.01 sanction in excess of that which is necessary to accomplish the purposes of discovery may be an abuse of discretion." *J.B.C. v. S.H.C.,* 719 S.W.2d 866, 872 (Mo.App. E.D. 1986). The purposes of discovery are

> to eliminate concealment and surprise, to aid litigants in determining facts prior to trial, ... to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings ... [and] to preserve evidence, prevent unjust surprise, and formulate issues for trial.

*Id.* at 869.

Here, the amount of monetary sanctions imposed on Defendant Ad Litem by the trial court totalled $20,621.65. This total consists of: $2,250.00 for the fee charged by Dr. Case for her deposition by Plaintiff in October 1997, plus $2,500.00 Defendant Ad Litem deposited in the trial court's registry, plus $15,871.65, the amount the trial court awarded August 17, 1998, less the balance in the trial court's registry.

We find it was not an abuse of discretion to require Defendant Ad Litem to pay the fee charged by Dr. Case for her October 1997 deposition by Plaintiff, or a total of $2,250.00, as a sanction for the then-untimely disclosure of Dr. Case as an expert witness. The record contains no reasonable explanation for Defendant Ad Litem's delay in learning of the two drivers' perspective that Decedent was slumped against the driver's side door just before the accident and in discovering the opinion of Dr. Case, the medical examiner who had performed the autopsy on Decedent right after the accident, regarding the cause of that behavior. These witnesses' names were available to both parties from the time the autopsy report and police report were available. Defendant Ad Litem had filed his original answer in August 1996. The disclosure of Dr. Case as an expert witness occurred more than one year after the answer was filed and approximately six months after Defendant Ad Litem first answered Plaintiff's expert witness interrogatory. Without a good basis for Defendant Ad Litem's failure to pursue these readily available and clearly relevant witnesses in a more timely fashion, the trial court properly imposed monetary sanctions on Defendant Ad Litem for the then-unseasonable disclosure of Dr. Case.

The remainder of the monetary sanctions imposed on Defendant Ad Litem was, however, unnecessarily excessive under the circumstances of this case. The trial court reasonably addressed any surprise or disadvantage to Plaintiff in the late disclosure of Dr. Case by continuing

trial for more than six months and giving Plaintiff the opportunity both to depose Defendant Ad Litem's experts and to obtain her own experts to rebut the information disclosed by Defendant Ad Litem's experts. The trial continuance and allowance of further discovery permitted the parties to determine the facts before trial, to develop their respective contentions, and to present their positions on the issues as reflected in the pleadings. We cannot ascertain how the imposition of additional monetary sanctions exceeding $15,000 was necessary to accomplish the purposes of discovery under the circumstances.

Under the circumstances of this case, we find the imposition of monetary sanctions beyond the $2,250.00 amount for fees charged by Dr. Case during her October 1997 deposition by Plaintiff was an abuse of discretion and reverse that award. By vacating this amount of the monetary sanctions, or a total of $18,371.65, we do not intend to preclude the recovery by either party of amounts otherwise due them pursuant to any relevant non-sanction authority. Therefore, we will remand this matter to the trial court to ascertain whether either party is entitled under any relevant non-sanction authority to a recovery of any costs, expenses, and fees that had been part of the reversed sanctions award.

■ In the second part of point three, Defendant Ad Litem contends the trial court erred "in ruling that [Defendant Ad Litem]'s naming of defense witness Dr. Mary Case regarding [Decedent]'s loss of consciousness, one month before the initial trial setting, raised a late affirmative defense that must be pleaded in an amended answer." The record reveals Defendant Ad Litem filed an amended answer in which Decedent's unforeseeable loss of consciousness was set forth as an affirmative defense and that Defendant Ad Litem pursued that theory throughout the proceedings before the trial court. Rule

84.13(b) does not permit the reversal of any judgment unless trial court error against appellant materially affected the merits of the action. We find any error in this challenged ruling did not materially affect the merits of the action because Defendant Ad Litem amended his answer to set forth Decedent's unforeseeable loss of consciousness as an affirmative defense and was able to pursue his theory that Decedent experienced an unforeseeable loss of consciousness throughout pretrial, trial and post-trial proceedings. It is not clear how the challenged ruling was error against Defendant Ad Litem, much less that it materially affected the merits of the action other than expressly to allow Defendant Ad Litem to pursue a theory he wished to pursue in defense of Plaintiff's negligence claim. This part of point three denied.

■ In the last part of point three, Defendant Ad Litem challenges the trial court's failure to require Plaintiff to pay the fees of Drs. Long and Krone for their preparation for and deposition time, and the $2,250.00 fee charged by Dr. Case for her October 1997 deposition.[5] Defendant Ad Litem asserts Plaintiff took these expert witnesses' depositions and should be required to pay those fees pursuant to Rule 56.01(b)(4)(b) and *George v. Eaton,* 789 S.W.2d 56, 61 (Mo.App. W.D.1990).

In *George* the Western District determined that the then-existing language of Rule 56.01(b)(4)(b) required a "party seeking to depose an expert witness . . . to pay a reasonable fee for time spent in preparation for the deposition," depending on the trial court's consideration of certain factors. *George,* 789 S.W.2d at 61–62. In relevant part the Rule stated "[u]nless manifest injustice would result, the court shall require that the party seeking discovery pay the expert a reasonable fee for responding to discovery by deposition."

**5.** Because the fees charged by Dr. Case for her October 1997 deposition are the subject of a sanctions provision encompassed by the earlier discussion of this point three, we will not further address this part of point three to the extent it focuses on those fees.

*Id.* at 61 (internal quotation marks omitted) (quoting Rule 56.01(b)(4)(b)).

We find the application of *George* to be limited because the relevant language of that Rule is more restrictive now. The relevant provision of Rule 56.01(b)(4)(b) applicable to this case states: "[u]nless manifest injustice would result, the court shall require that the party seeking discovery from an expert pay the expert a reasonable hourly fee *for the time such expert is deposed*" (emphasis added). This language expressly limits the payment of a deposed expert witness's fees to fees for hours spent in the deposition and does not include the payment of fees for any time the expert witness spent preparing for the deposition. Therefore, the trial court did not err in failing to require Plaintiff to pay any fees for time Defendant Ad Litem's expert witnesses spent preparing for depositions by Plaintiff.

■ Because it is not clear that the trial court found there was a manifest injustice sufficient to preclude Plaintiff from paying the fees charged by Dr. Krone and Dr. Long for the time they spent in their depositions by Plaintiff, we will also remand this issue to the trial court for further consideration under Rule 56.01(b)(4)(b).

Judgment on the jury verdict affirmed. The assessment of monetary sanctions against Defendant Ad Litem is affirmed in the amount of $2,250.00 and is otherwise reversed and vacated in the amount of $18,371.65. This matter is remanded to the trial court to ascertain which party is entitled under relevant non-sanction authority to recovery of costs, expenses, and fees that had been part of the reversed sanctions award. Because it is not clear that the trial court found there was a manifest injustice sufficient to preclude Plaintiff from paying the fees charged by Dr. Krone and Dr. Long for the time they spent in their depositions by Plaintiff, this issue is also remanded to the trial court for

further consideration under Rule 56.01(b)(4)(b).

WILLIAM H. CRANDALL, Jr., P.J. and KENT E. KAROHL, J., concur.