

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION FOUR</u>

| | | |
|---|---|---|
| HAZELCREST III CONDOMINIUM ASSOCIATION, | ) ) ) | ED102806 |
| Respondent, | ) ) | Appeal from the Circuit Court of St. Louis County |
| v. | ) ) | 12SL-CC04546 |
| FRANK BENT, | ) ) | Honorable John D. Warner Jr. |
| Appellant. | ) ) | Filed: July 12, 2016 |

## INTRODUCTION

In February 2015, after a bench trial, Hazelcrest III Condominium Association ("Plaintiff") secured a judgment against Frank Bent ("Defendant") for breach of contract and negligence. Both counts stem from a sewer backup that damaged two units located within Plaintiff's condominium complex. We affirm.

## BACKGROUND

Plaintiff is a non-profit condominium association overseeing the Hazelcrest III complex in Hazelwood, Missouri. Defendant owned a condo located within the Hazelcrest III complex, designated "Unit D", and used it primarily as rental property.

On October 10, 2012, the occupant of a condominium directly adjacent to Unit D informed Plaintiff of a water leak in her unit. The occupant then called a plumber, who

determined the water was originating from under the walls—from Unit D. Plaintiff attempted to contact Defendant but was unable to reach Defendant to inform him of the plumbing issue. Unit D had been vacant since July 2012, so Plaintiff called the Hazelwood Police Department to secure entry. Once inside Unit D, Plaintiff discovered Unit D in a foul state: the bathtub and toilet were overflowing with raw sewage, roaches infested the Unit, and in other rooms the water was several inches deep. An agent from Hazelwood Code Enforcement surveyed the area, declared both Unit D and the neighboring condo unfit for human occupancy, and stated that if the situation were not remedied, the entire building could be condemned.

Plaintiff declared an emergency pursuant to the powers under the Condominium Declaration and Bylaws (the "Declaration"), allowing Plaintiff to remediate the damage without Defendant's express permission. Plaintiff hired a plumber to remedy the clog, which, according to the plumber, was located in Unit D. Plaintiff also hired a restoration company to return both units to a safe and habitable condition. Thereafter, Plaintiff attempted to collect from Defendant for all expenses incurred, as permitted by the Declaration. When Defendant refused to reimburse Plaintiff for the expenses incurred, Plaintiff commenced this lawsuit. After a bench trial, Plaintiff was awarded $8,098 in damages and $28,574 in attorney's fees. This appeal follows.

## DISCUSSION

Defendant submits four points on appeal, contending that: (I) the judgment is not supported by substantial evidence or is against the weight of the evidence; (II) the trial court abused its discretion in granting two motions in limine in favor of Plaintiff; (III) the amount of damages assessed is not supported by substantial evidence or is against the weight of the evidence; and (IV) the trial court abused its discretion in calculating the amount of attorney's fees assessed against Defendant.

**Points I and III – The trial court's judgment was supported by substantial evidence and was not against the weight of the evidence.**

In his first and third points on appeal, Defendant contends the trial court judgment is not supported by substantial evidence or is against the weight of the evidence because (A) Plaintiff did not have the power to unilaterally remedy the situation, (B) the damage to both units was due to Plaintiff's own negligence, or (C) the amount of damages assessed, specifically concerning the drywall replacement, is not supported by substantial evidence or is against the weight of the evidence. We disagree.

*Standard of Review*

On review of a court-tried case, this court will affirm the trial court's judgment "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); see also Rule 84.13(d).[1]

Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the trial court's judgment. Ivie v. Smith, 439 S.W.3d 189, 199-200 (Mo. banc 2014). Evidence has probative force if it has any tendency to make a material fact more or less likely. Id. When reviewing whether the trial court's judgment is supported by substantial evidence, appellate courts view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary evidence, and will defer to the trial court's credibility determinations. Id. This is because trial courts are free to believe any, all, or none of the

---

[1] Throughout Points I and III, Defendant's appellate brief combines into the same point relied on a substantial-evidence challenge and an against-the-weight-of-the-evidence challenge. These are distinct claims. See In re J.A.R., 426 S.W.3d 624, 630 n. 10 (Mo. banc 2014); Pearson v. Koster, 367 S.W.3d 36, 43 (Mo. banc 2012). They must appear in separate points relied on in the appellant's brief to be preserved for appellate review. See Rule 84.04; Ivie v. Smith, 439 S.W.3d 189, 206 n. 10 (Mo. banc 2014). This Court will gratuitously address the merits of Defendant's claims. Appellate counsel should take caution to follow Rule 84.04(d).

3

evidence presented at trial. Id. All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Id.

A trial court's judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the record at trial, the existence of a fact that is necessary to sustain the judgment. Ivie, 439 S.W.3d at 206. This presupposes that there is sufficient evidence to support the judgment. Id. at 205. In other words, 'weight of the evidence' denotes an appellate test of how much persuasive value evidence has, not just whether sufficient evidence exists that tends to prove a necessary fact. Id. at 206. This court defers to the trial court's findings of fact when the factual issues are contested, as well as when the facts as found by the trial court depend on credibility determinations. Id. This is because the trial court is in a better position to weigh the contested and conflicting evidence in the context of the whole case, and is free to believe all, some, or none of the evidence offered to prove a contested fact. Id. When the evidence poses two reasonable but different conclusions, appellate courts must defer to the trial court's assessment of that evidence. Id. The against-the-weight-of-the-evidence standard serves only as a check on a trial court's potential abuse of power in weighing the evidence, and an appellate court will reverse only in rare cases, when it has a firm belief that the decree or judgment is wrong. Id.

*Analysis*

Here, the trial court did not make specific findings of fact; as such we read all factual issues as having been found in accordance with a verdict for Plaintiff. See Id. at 199-200.

Plaintiff brought a two-count Petition for breach of contract and negligence against Defendant. In its action for breach of contract, Plaintiff was required to prove by a preponderance of the evidence that Defendant was duty-bound by agreement to remedy the clog, he failed to do so, and Plaintiff was injured as a result. See Kieffer v. Icaza, 376 S.W.3d 653,

4

657 (Mo. banc 2012) ("To make a submissible case on a claim of breach of contract, [Plaintiff] had to prove the existence of a valid contract, the rights and obligations of each party, a breach and damages."). As to the negligence action, Plaintiff was required to prove by a preponderance of the evidence that Defendant owed a duty to remedy the clog and failed to do so, thereby injuring Plaintiff. See Byrd v. Brown, 641 S.W.2d 163, 173 (Mo. App. S.D. 1982) ("[A]ctionable negligence [] involves: defendants' duty to protect the plaintiffs from injury, failure to discharge that duty, and injury proximately caused by such failure."). We find substantial evidence to support both Plaintiff's breach of contract action and Plaintiff's negligence action, and the weight of this evidence supports the trial court's judgment and awarded-damages on counts I and III.

The Declaration contains the following relevant provisions:

The unclogging of drains, pipes and/or sewer lines *within the Units and partition* walls shall be the sole responsibility of the Owner of the effected [sic] Unit. Any unclogging of any such of drains, pipes and/or sewer lines shall be paid for by the Owner of the affected Unit. Section 5.1(f)(i).

If the Association determines that any Owner has *failed or refused to discharge properly his or her obligation* with regard to the maintenance, repair, or replacement of items of which he or she is responsible hereunder, [and] *if the Board determines that: (i) an emergency exists* [,] then the *Association may provide any such maintenance, repair, or replacement at the Owner's sole cost and expense*. Section 5.5.

(emphases added). Therefore, pursuant to the plain language of the Declaration, if the clog is determined to be within Defendant's unit, Defendant would be responsible for the repair and replacement costs. Further, if Plaintiff declared an emergency, it could remedy the situation without notifying Defendant, and bill him for all associated costs.

### A. *Evidence of an Emergency*

On October 12, 2010, Plaintiff became aware of a massive water leak emanating from Unit D. Plaintiff attempted to contact Defendant, but was unsuccessful. One of Plaintiff's board members, accompanied by two Hazelwood Police Officers, entered Unit D. Therein, they discovered the bathtub was full of greenish-brownish water, waste was overflowing from the toilet, and water covered substantial portions of the Unit—several inches deep in some parts. An officer from Hazelwood Code Enforcement (the "Code Officer") corroborated these facts, and not only declared Unit D unfit for human occupancy, but found that the neighboring unit was also unfit because the water had penetrated the wall between the two units. The Code Officer also informed Plaintiff that the situation needed to be remedied immediately, and if Plaintiff would not do so, the entire building may have to be condemned. Plaintiff declared an emergency pursuant to Section 5.5 of the Declaration, allowing Plaintiff to hire a plumber and a restoration company to remedy the situation and return both units to a habitable and safe condition.

The record does not reflect whether the Declaration defines the term 'emergency', but even under Defendant's proposed dictionary definition of the term, we still find substantial evidence to support the judgment. See Clampit v. Cambridge Phase II Corp., 884 S.W.2d 340, 345 (Mo. App. E.D. 1994) ("To determine whether a document is ambiguous, we consider the whole instrument and give the words their natural and ordinary meaning. That natural and ordinary meaning is derived from the dictionary.").

Plaintiff, in his brief, offers the following definition of 'emergency': "an unexpected and usually dangerous situation that calls for immediate action." Merriam-Webster's Learner's Dictionary (2010), available at http://www.merriam-webster.com/dictionary/emergency, (accessed July 5, 2016). The above evidence, read most favorably to the verdict, demonstrates:

6

(1) Plaintiff did not expect to find raw sewage scattered about Unit D; (2) the Code Officer deemed both units uninhabitable, i.e. dangerous to human occupancy; and (3) the situation needed to be addressed "immediately" (per the Code Officer) because, *inter alia*, the neighboring occupant could not return to the unit until the situation was remedied.

This evidence substantially supports Plaintiff's contentions that an emergency existed, enough to sustain the trial court's judgment when read in a light most favorable to the verdict. See Ivie, 439 S.W.3d at 199-200. Likewise, we find the existence of an emergency is not against the weight of the evidence, as these facts reasonably indicate that evidence with substantial persuasive value exists necessary to sustain the judgment. Id. at 206.

### B. Location of the Clog

Plaintiff's plumber testified that the clog was located within Unit D. He and his partner determined that the clog could not be located in the main run, nor in the adjoining unit's pipes. He recalled running approx. 25 feet of cable down from the roof, which he testified would have put the end of the cable within Unit D. There was some discrepancy as to the amount of cable used, because an invoice from that day showed that only 10 feet of cable was used—10 feet would not be enough to reach from the roof into Unit D—and so Defendant contends the invoice should prevail. However, the plumber testified that the invoice was incorrectly completed by another plumber who was not on site.

Since we defer to the trial court's credibility determinations, we find this testimony is substantial enough to support the trial court's judgment that the clog was within Defendant's locus of responsibility. See Ivie, 439 S.W.3d at 199-200. Likewise, we find the location of the clog not against the weight of the evidence, as the plumber's testimony reasonably indicates evidence exists necessary to sustain the judgment as to this element. Id. at 206. Even assuming

*arguendo* that Defendant's perspective on the facts are reasonable, we defer to the trial court's assessment of that evidence. See Id. ("When the evidence poses two reasonable but different conclusions, appellate courts must defer to the trial court's assessment of that evidence.").

### C. Drywall Replacement

Plaintiff's restoration company replaced, *inter alia*, floor-to-ceiling drywall panels in both units, as it was apparent to multiple witnesses that the extent of the damage necessitated such repair. The plumber testified that, in similar situations, the drywall would need to be replaced "because of the mold", as "once the drywall gets wet, it's soaked . . . and basically it doesn't dry up." Plaintiff's repair man testified that drywall "soak[s] up [water] like a sponge". The Code Officer testified that "the water had penetrated the wall and was in a hallway of the next unit."

Defendant's only apparent rebuttal evidence was his own testimony: he believed there was no reason to remove the drywall, or that perhaps only the bottom half of the wall needed to be removed. However, Defendant also admitted he had not visited Unit D since July 2012. In contrast, one of Plaintiff's employees stated that the reason why Plaintiff often hired that restoration company was because they "never did more work than was necessary" and were "trustworthy". Plaintiff admitted into evidence the bill detailing the cost for remediation, which included replacement of the drywall.

Defendant also contends that the Declaration only gives Plaintiff the power to charge Defendant for the damage to Unit D, and that the resident of the neighboring unit and/or Plaintiff should be responsible for the remediation costs to the neighboring unit. This argument is nonsensical, and contrary to long-established principles of Missouri tort law. See Wiley v. Homfeld, 307 S.W.3d 145, 153 (Mo. App. W.D. 2009) ("It is Missouri's well-settled rule that a

8

plaintiff is entitled to full compensation for past or present injuries that the plaintiff has shown by a preponderance of the evidence were caused by the defendant.").

Since Plaintiff had the power to declare an emergency under the Declaration, it could repair both units and bill Defendant for the expenses. The amount of damages awarded are not clearly wrong, were reasonably determined, and are not excessive. Scheck Indus. Corp. v. Tarlton Corp., 435 S.W.3d 705, 731 (Mo. App. E.D. 2014). As to Defendant's against-the-weight-of-the-evidence challenge, we may only reverse when we have a firm belief that the decree or judgment is wrong; we harbor no such beliefs.

Points I and III are denied.

**Point II – Limitations on Defendant's Testimony was not erroneous.**

In his second point on appeal, Defendant claims the trial court abused its discretion in granting two motions in limine in favor of Plaintiff. Specifically, Defendant contends he was improperly barred from (A) testifying about statements made by Plaintiff's representatives at a board meeting in April 2012, six months before the incident, concerning the existence of a sewage backup, and (B) speculating at trial as to the origins of the sewage backup. Defendant contends each of these rulings materially affected his defense in a prejudicial way, and he is therefore entitled to a reversal of the judgment. We disagree.

*Standard of Review*

The standard of review governing a trial court's decision to grant motions in limine is an abuse of discretion standard. Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc., 204 S.W.3d 183, 193 (Mo. App. E.D. 2006). The trial court abuses its discretion only when the ruling is clearly against the logic of the circumstances then before the trial court, and is so arbitrary and unreasonable as to shock the sense of justice and indicate lack of careful consideration. Id. A

9

trial court's discretionary ruling is presumptively correct and the appellant bears the burden of showing that the trial court abused its discretion and that the appellant was prejudiced by the abuse. Id. Where reasonable persons can differ about the propriety of the trial court's judgment, it cannot be said that the trial court abused its discretion. Id.

*Analysis*

### A. Board Meeting Statements

As to the statements purportedly made to Defendant at the board meeting, Defendant avers that, had he been allowed to testify that he put Plaintiff on notice concerning the existence of the clog, "we would not be in this situation nearly three years later." However, as we have discussed above, there is sufficient evidence to show that the clog was located within Unit D, and therefore Plaintiff's awareness of the clog is irrelevant. Simply, due to the allocation of responsibilities delineated in the Declaration, it was Defendant's sole responsibility to unclog any "drains, pipes and/or sewer lines within the Units and partition walls . . ."[2]

"Failure to admit evidence does not mandate a reversal of a judgment unless the error materially affected the merits of the action." See Lozano v. BNSF Ry. Co., 421 S.W.3d 448, 456 (Mo. banc 2014) (holding that "there is no connection whatsoever between the excluded evidence and the theories . . . that [Defendant] pled and tried to this jury"). Even assuming *arguendo* that the trial court abused its discretion—an unconvincing argument to say the least— we find that Defendant was not prejudiced by the exclusion of these purported statements.

### B. Speculation on Origins of Sewage Backup

As to Defendant's desire to speculate as to the origins of the sewer backup, we find the trial court did not abuse its discretion in barring this testimony.

---

[2] See Points I and III, supra.

10

"The purposes of discovery are to eliminate concealment and surprise, to aid litigants in determining facts prior to trial . . . to provide litigants with access to proper information with which to develop their respective contentions and to present their respective sides on issues framed by the pleadings . . . [and] to preserve evidence, prevent unjust surprise, and formulate issues for trial." Fairbanks v. Weitzman, 13 S.W.3d 313, 327 (Mo. App. E.D. 2000).

During discovery, Plaintiff deposed Defendant, and asked about his knowledge of the origins of the backup.

> Q [Attorney for Plaintiff]: So you said there was a sewage backup that occurred?
> A [Defendant]: Yes.
> Q: And do you know where that sewage backup was originating from?
> A: I don't.
> Q: Do you believe the leak came from [the neighboring unit]?
> A: I don't know where it came from.
>
> ***
>
> Q: The sewage backup that occurred in October, that was from a common element?
> A: I don't know.

Since Defendant answered in his deposition in a way that would have contradicted his proposed testimony, the trial court granted Plaintiff's motion in limine, commenting that:

> This line of questioning was right on point. [Defendant] can't come in now and speculate as to where the blockage came from when he was given every opportunity, it appears in his deposition, to do that. And he said he didn't know where it is, and I'm not going to let him do it now.

This ruling is not clearly against the logic of the circumstances, nor does it appear to be so arbitrary and unreasonable as to shock the sense of justice and indicate lack of careful consideration. Id. Even if we accept that Defendant only intended to testify that he was sure the clog was *not* located in Unit D—as stated at oral argument—and therefore he was wrongfully barred from testifying, we do not find the trial court's judgment improper. See Intertel, 204

11

S.W.3d at 193 ("Where reasonable persons can differ about the propriety of the trial court's judgment, it cannot be said that the trial court abused its discretion.).

Point II is denied.

**Point IV – Amount of Attorney's Fees Assessed**

In his final point on appeal, Defendant claims the trial court abused its discretion in calculating attorney's fees assessed against him. We disagree.

*Standard of Review*

The determination of attorney fees is within the sound discretion of the trial court and should not be reversed unless the award is arbitrarily arrived at or is so unreasonable as to indicate indifference and lack of proper judicial consideration. Trimble v. Pracna, 167 S.W.3d 706, 714 (Mo. banc 2005).

*Analysis*

Where a party's claim to attorney fees is based upon a contract the court must adhere to the terms of the contract. Id. The trial court is deemed an expert at fashioning an award of attorney's fees and may do so at its discretion. W. Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 23 (Mo. banc 2012). The trial court that tries a case and is acquainted with all the issues involved may fix the amount of attorney's fees without the aid of evidence. Id.

Section 11.2 of the Declaration allows for an award of attorney's fees to Plaintiff if it prevailed in its action against Defendant.[3] At the conclusion of the bench trial, Plaintiff presented billing statement delineating its costs and fees. The statement contained a detailed list

---

[3] Section 11.2 reads as follows:

> Attorney Fees. If an Owner or an Owner's family member, guest, tenant, invitee or licensee fails to comply with any provision of the Governing Documents, the Association may require reimbursement for reasonable attorney fees and costs incurred as a result of such failure to comply, without the necessity of commencing a legal proceeding. In a legal proceeding in any way related to the Governing Documents or the Community, the court shall award to the Association, if it is the prevailing party, its reasonable attorney fees and costs incurred in asserting or defending the claim.

of the attorneys who worked on this case, the hours logged by each attorney (as well as their rates), and a line-itemized total cost for each task completed. The statement shows approximately 100 hours logged prior to trial, three-quarters of which were completed by associates, for a total of approximately $25,000 in fees.

Plaintiff's Counsel also testified—under oath and subject to cross examination—that an additional $5,000 would be added due to the fees incurred for trial, and that Plaintiff's Counsel offered Plaintiff a 10% discount due to Plaintiff's not-for-profit status, thus bringing Plaintiff's fees to approximately $27,000. Plaintiff also requested approximately $1,500 in costs. Plaintiff's Counsel finally testified that some costs associated with jury trial preparation had been removed from the statement.

Defendant objected to the reasonableness of the request, arguing that a $27,000 award for a "relatively small straightforward breach of contract action" with just over $8,000 in actual damages would be unreasonable. Plaintiff's Counsel testified that a good deal of the run-up in costs was due to Defendant's "strenuous (for some reason) defense of this case." This, according to Plaintiff's Counsel, included time billed for drafting motions to strike and motions for a more definite statement, for a deposition conducted by Plaintiff where Defendant failed to appear, Defendant's hour-tardiness to his next scheduled deposition, Plaintiff's need to answer Defendant's counterclaims (which the court found baseless), and Defendant's general unwillingness to settle early in the case. Defendant did not cross-examine Plaintiff's Counsel on any of these statements.

In its judgment and order, the trial court found a contractual basis for an award of attorney's fees (the Declaration), and as an expert, determined the "various hourly rates of the

13

Plaintiff's attorney's law firm are reasonable." The court awarded $1,457.88 in costs and

$28,574.25 in attorney's fees, stating:

> On the surface, these attorney's fees would seem to be excessive. However, it was the cavalier attitude that the Defendant showed in the handling of his defense in this case that unnecessarily delayed these proceedings and in major part caused the Plaintiff, a non-profit condominium association, to incur more than normal attorney's fees. (It should also be noted that the Defendant also showed a cavalier attitude regarding the plumbing problem that led to the raw sewage flowing in his rental condo, which housed a young mother and young child as tenants).

Since the Declaration contemplates an award of attorney's fees, whether incurred in or out of court, the trial court had the authority to make an award in Plaintiff's favor. While the amount of the fees may seem high when compared to the damages awarded, the trial court took this into consideration when crafting its award. We cannot say that this amount was arbitrarily arrived at or that it indicates indifference or lack of proper judicial consideration.

Point IV is denied.

## CONCLUSION

The judgment of the trial court is affirmed.

_____
Lisa P. Page, Judge

Sherri B. Sullivan, P.J. and Kurt S. Odenwald, J., concur.